ALEXANDER BLYHL *vs.* VILLAGE OF WATERVILLE.

Submitted on briefs April 4, 1894.    Affirmed April 20, 1894.

No. 8600.

**Municipal liability for defective street.**

A municipal corporation is liable for an injury caused by an unsafe condition of a sidewalk, although the defect exists in the plan adopted by it for constructing the sidewalk, if there be no necessity or reason for having the defect.

Appeal by defendant, the Village of Waterville, from a judgment of the District Court of Le Sueur County, *Francis Cadwell, J.,* entered against it September 12, 1893, for $150 damages and $150.35 costs and disbursements.

The plaintiff, Alexander Blyhl, was a blacksmith forty years of age and resided in Waterville. On October 17, 1892, he went down town in the evening and on his return at about nine o'clock he went west along the sidewalk on the south side of Paquan Street. A new sidewalk had been built part of the way eight inches higher than the old one. The night was dark and rainy and when plaintiff reached the new walk he failed to see the step and walked against it and fell forward and had two ribs broken. He brought this action to recover damages, claiming his injury was due to the negligence of the village in leaving such a step

in the sidewalk when the surface of the ground made no necessity for it.    He had a verdict for $150.    Judgment was entered thereon and the village appeals.

*M. R. Everett* and *H. S. Gipson*, for appellant.

The plaintiff seeks to review in the courts the official action of the authorities of the village in adopting, after due consideration of the topography of the locality, a sidewalk having a step of eight inches in preference to one having a graduated incline.

Negligence cannot be predicated upon the plan on which the walk was built for that is in the discretion of the village authorities.    In determining whether there should be a step at the point of union of the two sections of the walk, or a graduated incline, the authorities acted in a *quasi* judicial character, and their action in that regard was judicial in its nature and is not subject to review in the courts nor can it be made the ground of a civil action for damages.    *Detroit* v. *Beckman*, 34 Mich. 125; *Toolan* v. *Lansing*, 38 Mich. 315; *Davis* v. *Mayor of Jackson*, 61 Mich. 530; *Urquhart* v. *Ogdensburgh*, 91 N. Y. 67; *McCutcheon* v. *Homer*, 43 Mich. 483; *Carr* v. *Northern Liberties*, 35 Pa. St. 324; *Shippy* v. *Village of Au Sable*, 65 Mich. 494; *Cram* v. *City of Chicago*, 138 Ill. 506; *Green* v. *Swift*, 47 Cal. 536; *Johnston* v. *District of Columbia*, 118 U. S. 19; *Fellows* v. *City of New Haven*, 44 Conn. 240; *Child* v. *City of Boston*, 4 Allen, 41; *Hines* v. *City of Lockport*, 50 N. Y. 236; *Watson* v. *Cambridge*, 157 Mass. 561; *Cook* v. *City of Milwaukee*, 27 Wis. 191; *Schroth* v. *City of Prescott*, 63 Wis. 652; *Lynch* v. *Mayor*, 76 N. Y. 60.

No fault is found with the construction of the walk or step but plaintiff attacks the plan the officers decided to adopt, and puts the ground of liability upon a failure to adopt another plan, "a graduated incline walk."    We submit the action cannot be maintained for the reason, among others, that the action of the village authorities was *quasi* judicial and not subject to review in the courts.    The power to determine upon a plan and method of improving streets and highways is a discretionary one, and a mere error of judgment in respect to the plan will not subject the town to an action for damages.

*John Moonan* and *F. B. Andrews,* for respondent.

As far back as *City of St. Paul* v. *Kuby,* 8 Minn. 154, this court said, there is no rule of law which determines or can determine what shall constitute a safe and suitable sidewalk in any given case. It is manifestly impossible to establish a uniform rule upon the subject since the sufficiency of a sidewalk in any particular case must depend upon the facts and circumstances existing and connected with such case. That doctrine has been the accepted law of this state ever since. *Tabor* v. *City of St. Paul,* 36 Minn. 188; Dillon, Munic. Corp. (3rd Ed.) § 66; *Snider* v. *City of St. Paul,* 51 Minn. 466; *Keaddy* v. *Shamokin,* 137 Pa. St. 98.

Whether the walk was in a reasonably safe condition for travel was for the jury. *Nichols* v. *City of St. Paul,* 44 Minn. 494; *City of St. Paul* v. *Kuby,* 8 Minn. 154; *Graham* v. *City of Albert Lea,* 48 Minn. 201; *Kellogg* v. *Village of Janesville,* 34 Minn. 132; *Young* v. *Village of Waterville,* 39 Minn. 196.

GILFILLAN, C. J. The defendant, a municipal corporation, required an owner of a lot abutting on one of its streets to construct a plank walk along the street by the side of his lot, and he constructed it on a grade given him by, and under the direction and with the approval of, defendant's street commissioner. As constructed, the walk made, at the junction of this new walk with the walk along the remainder of the block, a drop or step seven or eight inches in height. It is apparent there was no necessity or reason for having the drop instead of gradually sloping the grade of the new walk until it came to the grade of the remainder. It is also apparent that so sloping it would have made a safe walk, and that the drop made it dangerous to one passing along it in the dark. After the walk had been in that condition for about a month, plaintiff, passing along it in the dark, hit his foot against the face of the drop, and fell, and was injured, and brings this action to recover for the injury. From a judgment after verdict in his favor the defendant appeals.

Unless the defendant is exempt from liability on the ground claimed by it as hereinafter stated, the existence of the drop in the sidewalk to the knowledge of defendant, through its street commissioner, was sufficient to make defendant's negligence a ques-

tion for the jury. *Tabor* v. *City of St. Paul*, 36 Minn. 188, (30 N. W. 765.)

The defendant claims it cannot be held, because the defect in the walk was in the plan on which it was constructed; that the adoption by a municipal corporation of a plan for a public improvement is a legislative or discretionary function, and that the corporation is not liable for the consequences of any error in the discharge of such functions.

That a municipal corporation is not liable for consequential injuries arising from the *bona fide* exercise of, or omission to exercise, those powers which are conferred on its council or legislative body, and the exercise of which as to the time, extent, and manner is left to the discretion or judgment of such body, has been fully recognized by this court. *Lee* v. *City of Minneapolis*, 22 Minn. 13; *Alden* v. *Same*, 24 Minn. 254.

Most municipal public improvements come within such powers. Thus, unless controlled by charter provisions, when street grades shall be established, and on what planes or levels; when grades shall be changed, and to what planes; when streets shall be paved, and with what kind of pavement; when sidewalks and crosswalks shall be laid, and of what material; what sewers, gutters, and catch basins shall be made, and when and how,—are usually left to the judgment or discretion of the legislative body of the corporation. And while, of course, it is expected the best results to the people of the corporation will follow the efforts of that body, it is not enjoined as a duty to produce any particular result, so that failure to bring it about will make the corporation liable for consequential injuries.

The matter of keeping streets and sidewalks in safe condition stands on a different footing. It has always been held in this state that a municipal corporation having exclusive control of its streets, when the means are within its power, has imposed on it a positive duty to keep such streets in reasonably safe condition. Scores of recoveries for injuries resulting from neglect of that duty have been sustained in this court. The first formal statement of the rule was in *Shartle* v. *City of Minneapolis*, 17 Minn. 308 (Gil. 284) in these words: "It is well settled that a municipal corporation having the exclusive control of the streets and bridges

within its limits, at least if the means for performing the duty are provided or placed at its disposal, is obliged to keep them in a safe condition; and if it unreasonably neglects this duty, and injury results to any person by this neglect, the corporation is liable for the damages sustained."

In this particular there is not only a power conferred, but there is also a duty imposed, to use the power with a view to a particular result, to wit, the safe condition of the streets. Of this duty Dill. Mun. Corp. (4th Ed.) § 1023a, says: "Which duty is not legislative or judicial, but rather, in its nature, ministerial." It is therefore not left to the corporation's legislative body to determine when or to what extent the duty shall be performed, nor to determine it has been performed; for, if it were, it would be a discretionary, not a positive, duty.

That the safe condition of streets concerns the safety of life and limb, and not only convenience or property, is a reason for imposing a duty in respect to it greater than is imposed with respect to other matters of public improvement.

No question is made, nor can there be, on the decisions that, if a dangerous defect is due to wear, decay, accident, or the act of a third person, the corporation, upon notice of it, must seasonably repair it. In this case, if the property owner had, without authority, constructed the sidewalk with the dangerous defect, it would have been the duty of the corporation to seasonably remedy it. The corporation might adopt or ratify the plan on which the owner constructed the walk; but to hold that by so adopting or ratifying it it could avoid the duty to remedy the defect would enable it to determine whether it would perform the duty imposed on it or not, and it would cease to be a duty.

And if the corporation is not liable in case of a dangerous defect in a street or sidewalk, because the defect is in the plan previously adopted for its construction, then, although it is its duty to keep the streets in safe condition as against natural causes or the acts of third persons, it is not its duty to keep them in such condition as against its own acts. And whether it is its duty or not will depend on whether it is responsible for the unsafe condition; and if it may, without liability, determine in advance, in adopting a plan for construction, that a certain condition of the

street or walk will be safe enough, we do not see upon what principle it is to be liable if, after the condition exists, from whatever cause, it determines the street or walk to be safe enough, and to need no repair.

We have not used the term "positive duty" in the sense that the corporation insures the safe condition of its streets, or that it is bound to maintain them in that condition without reference to the difficulties in the way of doing so.   There may be defects that are practically irremediable.   The topography of the ground may be such as to render it practically impossible to have the streets entirely safe.   In that case the people must accept such as with reasonable efforts can be provided.   The law does not require of the corporation unreasonable things, but only that it shall employ, in performing its duty as to streets, the diligence, care, and skill that an ordinarily prudent person having a similar duty to perform would employ.   If it do so, there is no unreasonable neglect.   So far as concerns the safe condition of a street or sidewalk, the same requirement applies to adopting a plan either for its construction or repair.   Of course the corporation would not be liable merely because, in the opinion of a jury, a safer or better plan might have been adopted.   To illustrate, we may suppose a not uncommon case, where, owing to the character of the surface, a sidewalk must be constructed on one of two plans, each leaving it more or less unsafe,—one requiring a slope so steep as to be unsafe; the other, steps that will make it unsafe.   The corporation would not be liable for the dangers in the plan adopted merely because, in the opinion of a jury, the other would have been safer.   To make the corporation liable, the plan adopted would have to be so much and so obviously more unsafe than the other as to show a neglect to employ the diligence, judgment, and skill in determining the plan which ordinary care would require.

We are cited to some decisions in Michigan, New York, and Pennsylvania to the effect that a corporation is not liable for the consequences of a dangerous defect in a street or walk due to the plan adopted for its construction, because it is only an error of judgment in a matter resting wholly in the judgment or discretion of the corporation.   Those decisions are irreconcilable in principle with other decisions of the same courts, and inconsistent

with the proposition that keeping streets in reasonably safe condition is a matter of positive duty, and not of discretion.

We are therefore of opinion that the mere fact that an unsafe condition of a street is due to a defect in the plan for its construction will not shield the corporation from liability for injuries caused by such unsafe condition. There is no merit in any of the other points made by appellant.

Judgment affirmed.

CANTY, J. I agree with the result in this case and with the foregoing opinion, except that it seems to me it does not sufficiently limit the right of the courts to impeach or review the legislative judgment in adopting the plan of improvement. When the alleged defect appears to be a part of the plan, it should be presumed to be of legislative, not of ministerial, origin, until the contrary is proved. The courts cannot review the legislative judgment at all. They can impeach it only when it is not legislative judgment in fact. Unless it appears that the alleged defect is of ministerial origin, it must appear that there is such gross mistake in the adoption of the plan as would imply a failure to exercise the legislative judgment. If two reasonable minds might have adopted different plans, the legislative judgment cannot be impeached for having adopted either one of these plans.

(Opinion published 58 N. W. 817.)

Submitted on briefs April 4, 1894. Affirmed April 20, 1894.