JENNIE CONLON v. CITY OF ST. PAUL.

November 24, 1897.

Nos. 10,714—(113).

Negligence—Sidewalk—Improper Plan of Construction.

In an action for personal injury to a foot passenger on a sidewalk, resulting from what is alleged to be a dangerous condition of the walk, caused by constructing it on a defective or improper plan, *held*, if reasonable minds might differ as to whether the plan adopted or some other plan is the better, the decision of the city authorities on the question is conclusive, and cannot be reviewed by the courts.

Same—Indifference of City in Matter of Construction.

But if, in adopting the plan, there is such gross error of judgment as to show that in fact no intelligent judgment at all was ever exercised, as where there were no obstacles to be overcome which would furnish any reason or excuse for the dangerous condition complained of, the city is liable for constructing and maintaining the sidewalk on such defective plan.

Same.

In this case, *held*, there was such a reason, and the city is not liable.

Appeal by defendant from an order of the district court for Ramsey county, Otis, J., denying a motion for a new trial, after a verdict of $400 for plaintiff. Reversed.

*James E. Markham* and *Carl Taylor*, for appellant.
*McDonald & Kane*, for respondent.

CANTY, J.

Plaintiff, a foot passenger, was passing east along the sidewalk on the north side of Fourth street, between Jackson street and Robert street, St. Paul. Her foot slipped on the sloping side of an alley crossing, opposite the end of the alley which extends between the Pioneer Press Building and the Endicott Building, and she fell and broke her leg. This action was brought against the city to recover damages for the injury, on the ground that the city was negligent in maintaining the alley crossing (which is a continuation of the sidewalk) in a dangerous condition. On the trial plaintiff

---

1 Reported in 72 N. W. 1073.

had a verdict, and from an order denying a new trial defendant appeals. The only point raised is that the verdict is not sustained by the evidence.

The street was not out of repair. The alleged dangerous condition is caused solely by the manner in which the crossing was constructed. It is claimed that the city was negligent in constructing it with too steep a slope. There is a gradual descent in the street in the direction in which plaintiff was going, but the amount of that descent does not appear. The sidewalk is constructed of stone and the crossing is paved with rectangular wooden blocks. Commencing at the end of the stone sidewalk the alley crossing sloped down in the direction in which plaintiff was traveling. This slope is 9 inches in 3½ feet, or nearly 3 inches to the foot. This steep slope is near the line of the curb. There is less slope further in near the line of the buildings. The height of the curb or distance from the level of the gutter to the top of the stone sidewalk appears from the evidence to be about eight or nine inches.

At the time in question it was raining, and the sloping part of this crossing was slippery. Plaintiff while walking along was holding an umbrella over her with one hand and holding up the skirt of her dress out of the wet with the other hand, and was in this position when she fell.

We are of the opinion that plaintiff has not proved a cause of action against the city. In planning for the construction of this crossing, there were obstacles to be overcome. It is necessary that the sidewalk be so constructed that the surface of the same shall be higher than the gutter. The wheels of the wagons to be drawn from the street across the line of the sidewalk into the alley cannot ascend abruptly from the level of the gutter up to the level of the surface of the sidewalk. Neither can the gutter be raised at the place of crossing so as to make the ascent less abrupt, as this would obstruct the flow of water in the gutter and form an obstacle to the passage of vehicles along the street close to the curb. Then the crossing must be constructed with a gradual rise from the gutter across the line of the sidewalk. This might be done by forming an inclined plane from the middle or inner side of the sidewalk down to the gutter at the outer side. But this would result in a

perpendicular step from the outer side of the sidewalk down to this inclined plane while on the inner side the sidewalk and crossing would be on the same, or nearly the same, level. But whether at the outer side there shall be a perpendicular step or a gradual slope from the sidewalk down to this inclined plane, is ordinarily a question for the city officials, not for the courts.

Again, if such a slope (extending parallel to the line of the curb and near that line) is too gradual, it will form, just inside the gutter, an obstruction to the wheels of the vehicles which turn into the alley from the street. In order that it will not form such an obstruction, the slope must be rather steep. Again, such a slope must be greater when the general surface of the sidewalk descends or slopes in the same direction down the hill. It appears from the evidence that it was on just such a slope as this that plaintiff slipped and fell.

But whether this or some other plan should be adopted for constructing such a crossing is not a question for the courts but for the city officials. If it is debatable which is the better plan—if reasonable men might differ as to which is the better plan—the decision of the city authorities on the question is conclusive and cannot be reviewed by the courts. Neither the court nor the jury can substitute its judgment for that of the city authorities in such a case. But, if there is such gross error of judgment as to show that in fact the city authorities never exercised an intelligent judgment at all, the city may be liable for constructing or maintaining the improvement on the defective plan or scheme adopted.

In the case of Blyhl v. Village, 57 Minn. 115, 58 N. W. 817, a sidewalk was constructed with a drop or single step of seven or eight inches in the middle of the block. The surface of the street was nearly level. There was no occasion for such a step or drop, and such an unusual and unexpected obstruction made the street dangerous to one passing along in the dark. It was held that the village was liable for constructing and maintaining the sidewalk on such a defective plan. There was no obstacle to be overcome which would furnish any reason or excuse for the dangerous condition of the sidewalk. Here it is different.

The order appealed from is reversed, and a new trial granted.