ELIZABETH E. SHANNON ET AL., APPELLANTS, V. CITY OF OMAHA ET AL., APPELLEES.[*]

FILED APRIL 5, 1905.　No. 13,597.

1. Cities: SEWERS. Where a city has in good faith adopted and carried out the plans for a sewerage system of a competent sanitary engineer of high standing in his profession, it is not chargeable with the cost of additional or substituted improvements made necessary by the growth of the city.

2. Evidence examined, and held to show that the inadequacy of the six-inch sewer between 12th street and 16th street in the city of Omaha was largely caused by the increased capacity required by reason of business buildings of large size having taken the place of residences at that locality.

3. Assessment. The power to make public improvements and to assess the cost thereof upon property specially benefited thereby conferred upon municipal corporations is a continuing power and may be exercised whenever the public need demands.

4. Notice: WAIVER. When a person files a protest against a special assessment with the board of equalization before the time fixed in the published notice for the meeting of the board, he thereby waives any defect in the notice.

5. Cities: POWERS: ASSESSMENT. A city, under certain circumstances, has power to create a new sewer district within the limits of a larger district and to assess the cost of a new sewer in said district upon the abutting property therein according to special benefits received.

* Rehearing allowed. See opinion, p. 514, post.

6. **Assessment.** Under the evidence in this case, *held* that the special
benefits were practically confined to the property within the new
district, that each lot therein was specially benefited, and that
the front-foot method was not inequitable under the circum-
stances.

APPEAL from the district court for Douglas county:
GUY R. C. READ, JUDGE. *Affirmed.*

*Franklin J. Griffin* and *Richard S. Horton,* for appel-
lants.

*C. C. Wright, W. H. Herdman* and *A. G. Ellick, contra.*

LETTON, C.

This action was brought to enjoin the collection of cer-
tain special assessments against the property of the plain-
tiffs levied for the purpose of defraying the cost of the con-
struction of a sewer on Capitol avenue from 12th to 16th
streets in the city of Omaha. In 1882 a sewer district
was created by ordinance, known as sewer district No.
6, and comprising Capitol avenue from 9th street to 20th
street, the sewer beginning at 9th street on the east and
flowing to 12th street, and beginning at 20th street on
the west and flowing thence to 12th street, in which
street, both of these lateral sewers emptied into a main
sewer running at right angles thereto. It appears that
in 1882 the city authorities adopted a drainage plan for
the city, known as the "Waring System." Colonel War-
ing was a sanitary engineer of wide reputation and high
standing in the profession at that time, who had carried
out successfully a plan of sanitary sewerage in the city
of Memphis, in which he used for laterals six-inch pipes.
When the city authorities of Omaha were about to install
a sewerage system, they called in Colonel Waring and
adopted a complete plan and system for the city, pre-
pared by him. The then city engineer, Mr. Andrew Rose-
water, was not in favor of the Waring system, and testi-
fies that in his judgment it was not a practicable system

on account of the liability of the six-inch pipes to become blocked up by sticks and other obstructions; but the city council, evidently relying on the high reputation of Colonel Waring as a sanitary engineer, adopted his system in spite of Mr. Rosewater's objection. At the time the sewer was constructed, that portion of Capitol avenue between 12th and 16th streets was occupied mostly by small residences, but soon afterwards a number of business buildings were erected on this portion of the street, among them being the Dellone Hotel, a large five-story modern building, the W. R. Bennett store, the Presbyterian Hospital and the Exposition building. At least three hydraulic elevators were installed in these buildings, and water-closets with sewerage connections were put in place. The increased amount of water thus cast into the sewer was such that the six-inch pipe between 12th street and 16th street was not sufficient to carry it off, and the result was that the water from the sewer repeatedly backed up into the manholes and flooded the basement of the hotel, hospital and the Bennett store, rising high enough upon one occasion to put out the fires in the boiler room of the hotel, and requiring the use of the city fire-engine a number of times to pump out the basements.

The testimony showed that the use of hydraulic elevators throws at times large quantities of water into the sewer, and that the use of three elevators at the same time discharged into the six-inch sewer a larger quantity of water than it could carry away. From 20th street to 16th street there is a steep hill, and the rapid flow of that portion of the sewer seems to render a six-inch pipe sufficient to carry off the sewage upon that portion of the street, but a larger outlet was necessary on the comparatively level ground from 16th street to 12th street. In 1887, in order to remedy these defects, the city council created a new sewer district, known as district No. 211, comprising that portion of Capitol avenue from 16th street to 12th street, and constructed a sewer therein 24

inches in diameter instead of six inches as before, con-
necting with the six-inch pipe at the foot of the hill on
16th street.   Since the construction of this sewer there
has been no further trouble with the drainage of that por-
tion of Capitol avenue.   The plaintiffs paid the taxes
assessed against their property for the construction of
the six-inch sewer, but resist the collection of the taxes
for the 24-inch sewer.

The plaintiffs contend, first, that the city engineer
knew in 1882, when the first sewer was laid, that it was
insufficient; that he was opposed to its construction, and
that the city, regardless of this knowledge, accepted an
imperfect plan and constructed a worthless sewer; that
the city was negligent in so doing, and that to attempt to
assess the cost of a second sewer under such circumstances
upon the abutting property is unreasonable, oppressive
and void.   We think there is little merit in this conten-
tion.   In fact, we are inclined to think that the defective
construction of the sewer of which plaintiffs complain,
was brought about by an excess of caution on the part of
the city authorities.   So careful were they to obtain the
best obtainable system, that they disregarded the advice
of their city engineer, and sought to obtain the benefit of
the skill of one of the then most renowned sanitary en-
gineers of the United States.   They did what in their
judgment was for the best interests of the city, when they
employed a man with a reputation as an expert in that
line.   It is true that they might better have taken the
advice of their own engineer, for the future defects of the
system were not foreseen except by him.   When the city
council, misled by the glamour of a great name, employed
Colonel Waring, they did what any prudent, cautious
business man would have done under like circumstances,
and the plaintiffs cannot complain if their judgment was
erroneous.   The authorities cited by the plaintiffs are to
the effect that a city is liable for injuries caused to a
property owner by reason of its negligence in devising a
defective plan, and in constructing an improper drain,

creating a nuisance; but in this case, as we have seen, the city was not guilty of negligence. It exercised the highest care under the circumstances.

The plaintiffs further contend that, since that portion of the sewer between 16th street and 12th street received the accumulated sewage of the district between 16th street and 20th street, the city was without authority to assess the entire cost of the large sewer, made necessary by this discharge, upon the property between 12th street and 16th street; and it is argued that, since the property owners from 16th street west to 20th street derived some benefit from the enlargement of the sewer from 12th street to 16th street, they should pay a portion of the cost of the same. They urge that, since the construction of the first sewer, a number of boarding houses and other buildings have been erected between 16th street and 20th street; that consequently an increased amount of sewage has been cast into the six-inch pipe to the west of 16th street; that this has rendered a larger sewer necessary between 12th street and 16th street, and that therefore a part of the increased cost of the large sewer should be borne by the territory west of 16th street. The evidence shows, however, that the six-inch pipe between 12th street and 16th street was large enough to carry off the sewage coming down the hill until the business buildings were erected between 12th street and 16th street, and afterwards except during business hours when the hydraulic elevators and closets were being used; that for about seven hours each day the sewer was insufficient, but during the remainder of the time its capacity was enough, and there is no evidence of any clogging of the six-inch sewer west of 16th street at any time. The great fall at that portion of the sewer caused it to clear itself. It is apparent that the trouble largely arose from the increased use of the sewer within the new district. Under these circumstances we think there was nothing arbitrary, excessive or unjust in assessing the cost of the sewer to the abutting property between 12th street and 16th street, according to special

benefits. It is impossible to accurately ascertain and adjust with mathematical certainty the special benefits which any particular piece of property receives by virtue of the construction of an improvement such as a sewer. The most that can be done is to ascertain approximately the special benefits received by each particular tract, and unless the result of the assessment is excessive, arbitrary or unjust it will not be disturbed.

We think there is no force in the argument that when a city has once assessed the cost of a special improvement it cannot at a later period, when changing conditions and inceased growth have brought about a larger necessity, create a new improvement and assess the same against the property benefited, for the reason that the owners have already paid for one improvement. Such a holding might have the effect of continuing a condition which might suit a small town or city, and yet be totally inadequate to the requirements of a modern city of 100,000 inhabitants. The power is a continuing one and may be exercised whenever the public need demands it. *Koons v. Lucas*, 52 Ia. 177; *Sheley v. City of Detroit*, 45 Mich. 431; *Coates v. City of Dubuque*, 68 Ia. 550; *Broadway Baptist Church v. McAtee*, 71 Ky. 508; *Morley v. Carpenter*, 22 Mo. App. 640; Dillon, Municipal Corporations (3d ed.), sec. 686; Beach, Public Corporations, sec. 1168. With the growth of the city its need has grown. The improvement sufficient for 1882 was not sufficient for 1897. From the 1897 improvement the plaintiffs' property was benefited, and it should bear its just proportion of the burden, measured by the special benefits it received.

It is further objected that the notice of the meeting of the board of equalization is void, for the reason that the notice thereof was signed by "Beecher Higby, City Clerk." This was done by virtue of a resolution of the council directing him to prepare all notices thereafter publishing all meetings of the council as a board of equalization. This resolution was adopted prior to the

publication of notice of the meeting of the board to assess the tax in question. It appears that before the meeting a protest was filed with the board, signed as follows: "Caroline L. Poppleton and William S. Poppleton, executors and trustees of the estate of Andrew J. Poppleton, deceased, by William S. Poppleton." The property affected belonged to the estate of Andrew J. Poppleton, deceased, and was held in trust by Caroline L. Poppleton and William S. Poppleton as executors and trustees. The will creating the trust was construed by this court in *Portsmouth Savings Bank v. City of Omaha,* 67 Neb. 50, so far as related to the control of the same under the charter provisions as to special assessments, and it was there held that the trustees were "owners" under such statutes. We think this appearance cured any defect in the notice, if any such there was, which we doubt.

As to the objection that the assessment was made by the front-foot rule and not by ascertaining the special benefits, the board of equalization adjudged and determined that the several lots and tracts of real estate had each been specially benefited to the amount of the tax levied against each tract respectively.

A portion of the cost, amounting to $1,700 was paid by the city as general benefits on account of the use of the sewer as a storm-water sewer, and the remainder was charged against the property as special benefits. As we have seen from a consideration of the evidence, it would seem that the benefits were practically confined to the new district, that each lot therein was specially benefited, and that the front-foot method was not inequitable under the circumstances.

We recommend that the judgment of the district court be affirmed.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

36                                          AFFIRMED.

The following opinion on rehearing was filed February 8, 1906. *Judgment of affirmance adhered to:*

1. **Cities: Sewers: Assessment.** All of the property in a sewer district which is benefited by the improvement should bear its fair proportion of the necessary expense of rebuilding and repairing the sewer, or a part of the sewer, in such district. The city council cannot determine in advance, and without a hearing, that a part only of the property in the district will be benefited, and for the purpose of making the improvement create a new sewer district embracing only such part of the property and assessing the cost to the property benefited.

2. **Assessment: Injunction.** A party complaining of an unlawful division of a sewer district, and seeking on that ground to enjoin the collection of special assessments against his property in a new sewer district so formed, must show that he has been in some way affected to his substantial injury by such division.

Sedgwick, C. J.

In the brief and oral argument upon the rehearing of this · case, it was contended that the principle stated in the fifth paragraph of the syllabus is not applicable to the facts as disclosed by the record. It appears that the city council ascertained that it was necessary to rebuild a part of the main sewer extending along Capitol avenue through sewer district No. 6, as it then was, because the sewer was not of sufficient capacity. It was determined to rebuild and enlarge that part of the sewer from 16th street to 12th street. The council thereupon enacted an ordinance providing for the construction of a 24-inch sewer from 16th street to 12th street, and in the same ordinance created a new sewer district out of that part of the old sewer district No. 6, which lay between 16th and 12th streets. The objection of the plaintiffs is that, by creating this new sewer district, in which only that part of the sewer lay which was to be rebuilt, the council, in effect, determined in advance that no part of the sewer district No. 6 would be benefited by the improvement, except that part embraced in the new sewer

district. By this action of the council the plaintiffs were deprived of a hearing as to whether property in sewer district No. 6, and not included in district No. 211, was especially benefited by the improvement, and as to what proportion of the cost of the improvement should be assessed against that property. When expense is to be incurred in rebuilding or enlarging a part of a sewer in a given sewer district, such expense should be borne by the property in that district especially benefited thereby to the extent and in the proportion of such special benefits. It may well be doubted whether the council could determine in advance, and without a hearing, that a certain part of the property in the sewer district would be benefited and the remainder of the property would not be benefited, and create a new sewer district composed of the property to be benefited by the improvement, and so relieve the remaining property of the sewer district as it formerly was from any part of the expense of the improvement. The question is whether these parties are in a position to complain, and have just grounds to complain, of this action of the city council. These plaintiffs have brought an action in equity to cancel the special assessments against their property. This suit was begun about three years after the action of the city council in creating this sewer district. In the meantime the improvement was completed, and these plaintiffs have received the benefits arising from the improvement. The action of the council in creating the new sewer district, if it rendered their proceedings in assessing the special benefits against this property irregular and erroneous, would not deprive the council of jurisdiction to make such assessment. It seems very clear that the plaintiffs, in order to maintain an action of this nature, after so great a lapse of time, must, in any view of the case, make it affirmatively appear that they have been substantially injured by this erroneous proceeding on the part of the council. It appears from the petition that only a part of the cost of the improvement was assessed against the

abutting property. The total cost of the improvement was $4,252.65, and $1,700 of this was paid out of the general fund of the city. There is no allegation in the petition that the amount assessed against the property of the plaintiffs was greater than the benefits conferred upon the plaintiffs' property by the improvement; and it does not appear from the allegations of the petition that the property embraced in sewer district No. 6, as it was before the creation of the present sewer district number **211**, and not included in that district, was benefited by the improvement, or could have been assessed in any amount so as to have reduced the assessment against the property of the plaintiffs, or in any way have benefited the plaintiffs. The plaintiffs have not shown that they have been in any way injured by the action of the city council complained of.

Our former opinion in this case is adhered to.

AFFIRMED.