FLAVIA WATTERS, ADMINISTRATRIX, APPELLEE, V. CITY OF OMAHA, APPELLANT.*

FILED JUNE 8, 1906. No. 14,355.

Cities: PUBLIC WORKS: LIABILITIES. Where a city in the erection of a public work exercises reasonable care and judgment, and adopts plans approved and recommended by engineers having all the knowledge that skill and experience in such work would naturally give them, it should not be held liable in damages on account of an alleged defect in the plan, unless the construction is so manifestly dangerous that all reasonable minds must agree that it was unsafe.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JR., JUDGE. Reversed.

Harry E. Burnam, I. J. Dunn and A. G. Ellick, for appellant.

Weaver & Giller and John M. Macfarland, contra.

JACKSON, C.

The plaintiff, as administratrix of the estate of her deceased husband, recovered judgment against the defendant city because of the death of the decedent, which it is

---

* Rehearing allowed. See opinion, p. 859, post.

alleged occurred through the negligent acts of the defendant. The deceased was a laborer in the employ of a distilling company, and was returning to his home by way of Eleventh street. On this street is a viaduct over the Union Pacific and Burlington railroad tracks. The viaduct covers a distance of four blocks or more, and an open stairway extends from the roadway of the viaduct into one of the streets below, constructed for the convenience of foot passengers. The deceased was seen to turn into this stairway, and an instant later to fall into the street. He sustained injuries from which his death occurred within two or three hours. His only statement about the fall was that he slipped. It is charged in the petition that he slipped upon one of the steps which had become worn and slippery on account of continuous rainfall for several days previous to the accident. Negligence is attributed to the city because the railing at the stairway was not sufficiently high to prevent persons from falling over, because of a failure to cover the stairway and because of the rise exceeding six inches in twelve, thereby rendering the descent dangerously steep.

The evidence discloses without question that the viaduct and stairway were constructed jointly by the city of Omaha and the railroad company over whose tracks it was built. Plans and specifications were submitted by contractors, and the one adopted had the approval of Andrew Rosewater, city engineer of the defendant, the chief engineer of the Burlington railroad company, the chairman of the board of public works of the defendant, at one time chief engineer of the Union Pacific Railroad Company, and another engineer who had occupied a similar position. They were all of recognized and known ability and eminent as civil engineers. They recommended the adoption and approval of the plans by the board of public works, and acting upon their advice and recommendation the plans were adopted by that board and afterwards approved by the city council. The viaduct was constructed according to these plans and specifications. The

same is true of the stairway and railing, although action was taken at a later date, but prior to the construction of the bridge. Mr. Rosewater was a witness at the trial and testified that the railings were of standard manufacture and height. There is no claim of a defective construction, and the single question presented by the record is the sufficiency of the evidence to sustain the verdict of the jury and judgment of the court. The railing is two feet six inches above the outer edge of the step and about three feet above the inner edge.

Special interrogatories were submitted to the jury, who found that the accident occurred because the city did not build the banisters of sufficient height. The contention of the city is that, based upon this finding, the verdict cannot stand. The position of the defendant in this respect is fortified by abundant authority and, in our judgment, well taken. In planning a public work municipal authorities are required to exercise reasonable care and judgment, and if the services of professional men, experts in the work contemplated, are needed, they should employ those who have all the knowledge and skill that experience in such work would naturally give them. *Diamond Match Co. v. Town of New Haven,* 55 Conn. 510. When that course has been pursued in good faith, and the work has been carried on and completed as planned and specified, the municipality should not be held responsible, unless the structure is so manifestly dangerous that all reasonable minds must agree that it was unsafe. *Gould v. City of Topeka,* 32 Kan. 485. The principle involved was recently thoroughly discussed in *Shannon v. City of Omaha,* 73 Neb. 507, in an opinion by Mr. Commissioner LETTON, now a justice of this court, and was sustained to that degree contended for by the defendant. Any other rule would render precautionary measures on the part of municipal authorities without avail, and the judgment of engineers skilled in their profession would afford no protection, because the possibility of accident cannot be provided against, and, after all, it became a question for a jury, who out of just sympathy for

a bereaved family might readily find the existence of negligence, notwithstanding the exercise of the highest degree of caution and the employment of the best skill obtainable. There may be a difference of opinion whether the rail or banister on the stairway where the accident occurred was of sufficient height to afford the proper protection to the public, but we are not prepared to say, as a matter of law, that it was insufficient.

Such of the authorities cited by plaintiff as we have examined are easily distinguishable from the case at bar. *Blyhl v. Village of Waterville,* 57 Minn. 115, is a case where, in the construction of a walk along a part of a block, at the junction of the old walk there was left a drop of some seven or eight inches, and, passing along there in the night season, a person struck his foot against the face of the drop, fell and was injured. As a matter of law such an imperfect construction was manifestly dangerous. In *McDonald v. City of Duluth,* 93 Minn. 206, it appeared that in constructing a rail over the sides of a bridge one of the guard rails was imperfectly placed and not sufficiently fastened, it was loose and liable at any time to slip out of place and over the bridge. The supreme court of Minnesota, however, so far as we are able to determine, has never departed from the rule that, if reasonable minds might differ as to whether the plan adopted or some other plan is the better, the decision of the city authorities on the question is conclusive and cannot be reviewed by the courts. That rule is expressly recognized in *Conlon v. City of St. Paul,* 70 Minn. 216. Authorities may be found holding, in effect, that, although streets are built and maintained according to plans adopted, if they are so built as to cause an obstruction or impediment to travel, the city might still be liable; but none of these authorities are applicable to this case.

We are convinced that the verdict of the jury has no support in the evidence, and we recommend that the judgment of the district court be reversed.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

REVERSED.

The following opinion on rehearing was filed February 8, 1907. *Judgment of reversal adhered to:*

ALBERT, C.

In this case, as in ordinary cases grounded on negligence, the acts or omissions of the defendant upon which the charge of negligence is based are to be tested by the conduct of a man of ordinary care and prudence in like circumstances. The improvement of which the stairway in question is a part is of such a character that it could be planned and constructed only by men of peculiar skill and knowledge in that line. The city authorities therefore were compelled to employ experts to plan and construct it. In doing so they did precisely what a man of ordinary care and prudence would have done in like circumstances. Where, then, is the point of departure from the course of conduct such a man would have pursued? Is it in the adoption of the plan? They had employed men skilled in their profession to prepare it. Had they not a right to rely on the superior judgment and skill of such men? Would not a man of ordinary care and prudence have done so in like circumstances, unless the plan was so obviously defective that there could be no difference of opinion among reasonable men with respect to it?

On account of the engineering problems involved, there is a strong analogy between an improvement of this character and the construction of sewers, and the cases growing out of the latter, on that account, have a strong bearing on the case at bar. In the study of those cases, however, the distinction between a defect in a plan and a defect in the execution of the plan should be kept in mind. In *Johnston v. District of Columbia*, 118 U. S. 19, it was said:

"The duties of the municipal authorities, in adopting a

general plan of drainage, and determining when and where sewers shall be built, of what size and at what level, are of a *quasi* judicial nature, involving the exercise of deliberate judgment and large discretion, and depending upon considerations affecting the public health and general convenience throughout an extensive territory; and the exercise of such judgment and discretion, in the selection and adoption of the general plan or system of drainage, is not subject to revision by a court or jury in a private action for not sufficiently draining a particular lot of land."

To the same effect are the following: *Fair v. City of Philadelphia*, 88 Pa. St. 309, 32 Am. Rep. 455; *Mills v. City of Brooklyn*, 32 N. Y. 489; *Child v. City of Boston*, 4 Allen (Mass.), 41, 81 Am. Dec. 680; *Attwood v. City of Bangor*, 83 Me. 582; *Wicks v. Town of DeWitt*, 54 Ia. 130; *Merrifield v. City of Worcester*, 110 Mass. 216, 14 Am. Rep. 592; *Van Pelt v. City of Davenport*, 42 Ia. 308, 20 Am. Rep. 622; *Foster v. City of St. Louis*, 71 Mo. 157; *City of Denver v. Capelli*, 4 Colo. 25, 34 Am. Rep. 62. In *City of Detroit v. Beckman*, 34 Mich. 125, this rule was limited somewhat, the court holding that municipal corporations are not liable for injuries resulting from the plan of a public work as distinguished from its mode of execution, unless such plan must necessarily result in an invasion of private property. Judge Dillon commends this rule as thus limited. 2 Dillon, Municipal Corporations, secs. 1046, 1047.

In the adoption of a plan the city was not entirely free-handed. The character of the location, the necessities of street traffic, and the safety of the public, all had to be taken into account. The sum total of the advantages and disadvantages of the improvement had to be weighed and set over against each other. The adoption of plans therefore was not a mere ministerial act, but one of a *quasi* judicial nature, and ought not to be subject to revision by a jury in a private action. I am unable to discover any difference in principle between this case and that of an

employer who acts upon the advice of experts as to the tools and appliances to be used, or a railroad company which adopts the devices and appliances in common use and recommended by experts. See *O'Neill v. Chicago, R. I. & P. R. Co.*, 66 Neb. 638.

By the Court: For the reasons stated in the foregoing opinion, our former judgment is adhered to.

REVERSED.