FLAVIA WATTERS, ADMINISTRATRIX, APPELLEE, V. CITY OF OMAHA, APPELLANT.

FILED MAY 5, 1910. No. 15,994.

1. **Appeal:** LAW OF CASE. A decision of this court on a former appeal of a question presented by the record is thereafter the law of the case; and when the evidence is substantially the same as on a former appeal, the weight and effect to be given such evidence must be considered as foreclosed by the former decision on that point. *Mead v. Tzschuck,* 57 Neb. 615.

2. ———: DAMAGES: INSTRUCTIONS. Where damages are sought to be recovered for two causes, for one of which the defendant may be responsible, while for the other he is clearly not responsible, it is reversible error to submit both causes to the jury; and where in such case a general verdict is returned for the plaintiff, a new trial should be awarded.

APPEAL from the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE. *Reversed.*

*Harry E. Burnam, I. J. Dunn* and *John A. Rine,* for appellant.

*John M. Macfarland* and *Weaver & Giller, contra.*

BARNES, J.

This is the second appeal in this case. The action was one to recover damages for the alleged negligence of the defendant in constructing and maintaining a stairway from the Eleventh street viaduct to Leavenworth street in the defendant city, which it is claimed caused the death of plaintiff's intestate.

The question presented for our consideration upon the former appeal was one of negligent construction, and it was there said: "Where a city in the erection of a public work exercises reasonable care and judgment, and adopts plans approved and recommended by engineers having all the knowledge that skill and experience in such work would naturally give them, it should not be held liable

in damages on account of an alleged defect in the plan, unless the construction is so manifestly dangerous that all reasonable minds must agree that it was unsafe." *Walters v. City of Omaha*, 76 Neb. 855.

It appeared upon that hearing that the plans and specifications for the improvement in question were submitted by contractors, and the one adopted had the approval of Andrew Rosewater, city engineer of the defendant; and, also, of the chief engineer of the Burlington railroad; the chairman of the board of public works of the defendant, at one time chief engineer of the Union Pacific Railroad Company; and of another engineer, who had occupied a similar position. They were all of recognized and known ability, and eminent as civil engineers. They recommended the adoption and approval of the plans by the board of public works, and, acting upon their advice and recommendations, the plans were adopted by the board, and afterwards approved by the city council, and the viaduct was constructed according to those plans and specifications. A rehearing was granted upon the application of the plaintiff, and a second opinion was written, which will be found in 76 Neb. 859. It was there further said: "The improvement of which the stairway in question is a part is of such a character that it could be planned and constructed only by men of peculiar skill and knowledge in that line. The city authorities therefore were compelled to employ experts to plan and construct it. In doing so they did precisely what a man of ordinary care and prudence would have done in like circumstances. Where, then, is the point of departure from the course of conduct such a man would have pursued? Is it in the adoption of the plan? They had employed men skilled in their profession to prepare it. Had they not a right to rely on the superior judgment and skill of such men? Would not a man of ordinary care and prudence have done so in like circumstances, unless the plan was so obviously defective that there could be no difference of opinion among reasonable men with respect to it?"

We adhered to our former opinion by which the judgment of the district court was reversed and the case remanded for a new trial. At such trial the plaintiff had the verdict and judgment, and the defendant has again appealed. The record herein discloses that the evidence was the same upon the question of construction, and especially with regard to the adoption of the plans and specifications for the improvement, as it was upon the first trial. In fact, a careful reading of the bill of exceptions discloses that the plans and specifications for the construction of the Eleventh street viaduct, including the stairway in question and the railing thereof, were recommended by the board of public works and adopted by the mayor and city council of the defendant city; that the improvement was constructed in accordance with such plans and specifications, and in full compliance therewith. Therefore our declaration upon this question should have been held by the district court to be the law of the case, and the question of construction having been thus settled should not have been submitted to the jury. *Mead v. Tzschuck,* 57 Neb. 615.

It appears, however, that the question of construction was not only submitted to the jury, but they were allowed by the trial court to visit the viaduct for the purpose of viewing its construction, and this too, notwithstanding the fact that the stairway, from the top of which the plaintiff's intestate fell and was killed, had been removed and was no longer a part of the improvement. It is true that there were other stairways leading from the viaduct at other points to the street below, but the one in question had been removed prior to the date of the last trial.

It is contended by the plaintiff that the defendant city failed to prove that the plans and specifications for the construction of the improvement had been adopted by the city council. The record of the proceedings of the council in relation to that matter not only established that fact, but Mr. Rosewater, who was the city engineer at the time the viaduct was constructed, testified as follows:

"Q. Then, these printed specifications here, appearing as a part of the contract, you may state whether those are the specifications that were prepared for the construction of the Eleventh street viaduct? A. Yes, sir. Q. And the specifications that governed the construction? A. Yes, sir, they are. * * * Q. Can you, by referring to this paper (counsel hands paper to witness), and also to their explanation of their plan, refresh your recollection as to whether it was plan A, B, or C that was adopted? A. Yes; I can recall that it was the plan A that was adopted with certain modifications. Q. Mr. Rosewater, I call your attention to the paper marked exhibit 7 SS, and ask you to state what that is (handing paper to witness). A. This is a section—a plan of the Manly and Cooper railing which was submitted and was approved by the engineers and the board for the Eleventh street viaduct. Q. What portion of the viaduct? A. For the stairways on the viaduct. Q. Calling your attention to the face of the blue print, does it show the stairway? A. Yes, sir. Q. And the railing on the stairway? A. Yes, sir. Q. You may state if you are familiar with the stairway and railing that was constructed on the Eleventh street viaduct at the time. A. I am. Q. You may state whether or not the railing and stairway that was constructed on the Eleventh street viaduct was according to the plan as shown on the blue print that you have in your hands. A. Yes, sir. Q. You may state if you recognize this signature here of Mr. J. E. House—the words 'Approved. Board of Public Works. J. E. House, Chairman.' A. Yes, sir. Q. You may state whether that is the signature of J. E. House, chairman of the board. A. Yes, sir; that is his signature." The witness also testified that the plans and specifications in question were adopted by the city council. No evidence whatever was introduced upon this subject by the plaintiff, and we are unable to understand the contention that is now made that the plans and specifications upon which the stairway and railing in question were constructed were not approved and adopted by t[...]

mayor and city council of the defendant city. It therefore seems clear to us that the district court erred in submitting the question of negligent construction to the jury.

Again, to entitle plaintiff to recover on the ground of negligent or improper construction, it was incumbent upon her to establish such negligence by a preponderance of the evidence. After a careful reading of the bill of exceptions, we are constrained to say that she failed to meet that requirement. Her expert witnesses appear to have had no experience in the construction of viaducts and stairways. They were unable, from observation, to give the dimensions or height of the stair railing in question. It is true that they testified as to the height of standard railings used in such construction, which was on an average of about 39 inches. It appears from a diagram of the railing in question, found in the bill of exceptions, that at the heel of the tread or step it was 3 feet and 3 inches high. At the middle of the step it was 2 feet $11\frac{1}{4}$ inches high, while at the front edge of the step it was 2 feet $7\frac{1}{2}$ inches in height. It thus appears that the railing in question was of the standard pattern and height. The defendant's witnesses, who had examined stairways in many public buildings, testified that the railings thereon were practically of the same height as the one in question. In fact, no witness has testified that the construction was in fact an improper or faulty one. Therefore, it cannot be said that it was such "that all reasonable minds must agree that it was unsafe." The record, therefore, affords no excuse for submitting that question to the jury.

Considering the question of the defective condition of the steps: It is extremely doubtful if plaintiff's evidence was sufficient to sustain a verdict upon that ground. It is true the plaintiff, some days after the happening of the accident—the number of days not being given—examined the top steps of the stairway in question, and her testimony was, in substance, as follows: Well, this is about the way I saw it. All the edge was worn off. The step was kind of slanting toward the front edge of the step,

and it was wet and slippery, and it was splintered up, and
the grains of the timber or boards that it was made of—
edges of the grain—kind of loosened up about where he
fell from, but not exactly. The step, the second and third
step, were all about the same—two or three steps there
together. A witness of the name of Mame Heron testified
that she saw Watters fall over the railing; that he looked
like he was on the third step; that a few days after the
accident she examined the steps, and they were not sound;
that the third step was broken, and that a piece of wood
was lying on the other step where it broke off; that this
was on the south side of the stairs, but the evidence dis-
closes that Watters fell over the north railing, and not
from the south side of the steps. This same witness, how-
ever, testified upon a former occasion that she did not
see the man until he was over the railing; that her atten-
tion was called to him by another girl, a companion of
hers; that she was, at the time of the accident, watching
for the approach of trains, while her companion was look-
ing at the viaduct. She also testified, upon the last
trial, that she saw Watters turn onto the stairway from
the viaduct, step down three steps, stop and look over
the railing, then she saw his knees bend, and finally he
plunged over the railing. Several witnesses for the de-
fendant, who seem to have no interest in the result of the
trial, testified that they examined the step, as a matter
of curiosity, immediately after the accident happened;
that they were in good, safe and serviceable condition;
that they were not unsound or rotten; and that the third
step was not split or splintered up, and no piece had
been broken off from it. Conceding, however, that the
condition of the step was a matter for the consideration
of the jury, still there is no evidence from which it can
be determined, with any reasonable certainty, that the
deceased fell from the third step of the stairway, or that
the condition of any of the steps near the top of the via-
duct caused his fall. His own statement, when he became
conscious after striking the ground, as to what caused

him to fall was that he "slipped." It would, therefore, seem clear that the cause of the accident must always remain a mere matter of conjecture.

It is contended by the plaintiff that this was a proper question for the jury, and therefore the judgment must be affirmed. While, on the other hand, the defendant contends that where damages are occasioned by one of two causes, for one of which the defendant is responsible, and for the other of which it is not responsible, it is reversible error to submit both causes for the determination of the jury. We think this contention is well founded, for it is impossible to determine upon which of the two grounds the jury based their verdict. As above stated, the plaintiff was not entitled to recover upon the ground of negligent construction; but, that question having been submitted to the jury, it is not only probable but reasonably certain, in view of the want of competent evidence to prove a defective condition of the steps at the time of the accident, or that such condition in any way contributed to the injury complained of, that negligent construction was the ground upon which they based their general verdict. With this condition confronting us, it is our duty to grant the defendant a new trial.

It is contended, however, by the plaintiff that, because the defendant requested the trial court to instruct upon that point, it is now estopped to complain of the submission of that question to the jury. The record discloses that defendant demurred to the plaintiff's evidence upon that point, and asked to have it excluded. Defendant also requested the court to direct the jury to return a verdict in its favor, at the close of all of the evidence, and asked the trial court to direct the jury to make special findings on that matter. All of which requests were refused. Having been thus compelled to submit that question to the jury, defendant is not estopped to question such submission. *Sorensen v. Sorensen*, 68 Neb. 509.

For the foregoing reasons, the judgment of the district

court is reversed and the cause is remanded for further proceedings.

REVERSED.

REESE, C. J., dissents.