HAINES, PLAINTIFF, *v.* EBERT, M. D., DEFENDANT.

Common Pleas Court, Tuscarawas County.

No. 34921.   Decided October 28, 1961.

Mr. *John F. Locke* and Mr. *Anthony Flex*, for plaintiff.
Messrs. *Black, McCuskey, Souers & Arbaugh*, for defendant.

LAMNECK, J. In this case the plaintiff sought to recover damages from the defendant for alleged malpractice in performing a surgical operation and failing to perform necessary post-operative treatment. The matter was submitted to a jury which rendered a verdict for the defendant.

The matter is now before the court on a motion for a new trial. Seven grounds of error are set forth in the motion but only three were stressed in argument, viz:—

1. That the court erred in deleting from plaintiff's exhibit B the words: "Spermatic duct apparently divided about four inches below internal ring."

2. That the court erred in giving the defendant's second special charge to the jury readings as follows:

"The court says to you that the rule by which the defendant, Dr. Paul W. Ebert, is to be judged is whether he, in the performance of his service to the plaintiff, either did some particular thing or things that physicians and surgeons of **ordinary** skill, care and diligence would not have done under the same or similar circumstances, or failed or omitted to do some particular thing or things which physicians and surgeons of ordinary skill, care and diligence would have done under the same or similar circumstances.

"So, if you find that the defendant, Dr. Paul W. Ebert, did not commit some *positive* act that physicians and surgeons of ordinary skill, care and diligence would not have committed, and you also find that he did not omit to do something that such physicians and surgeons would have done in his treatment of the plaintiff, then your verdict must be for the defendant, Dr. Paul W. Ebert.

"3. That the defendant's counsel engaged in misconduct in his argument to the jury which was prejudicial to the plaintiff."

Relative to the first ground of alleged error noted herein, it was shown by the evidence that the defendant, Dr. Paul W. Ebert, performed a surgical operation on the plaintiff at Union Hospital, Dover, Ohio, on March 3, 1960, for the correction of a left inguinal hernia.

Subsequent to the operation, the plaintiff submitted to another operation at Union Hospital on May 24, 1960, at which

time the plaintiff's left spermatic cord and testicle were removed. The plaintiff claimed that such removal became necessary because of the defendant's alleged malpractice in performing this first operation. The second operation was performed by Dr. D. H. Downey.

Dr. Downey noted in Plaintiff's Exhibit B a finding in words reading as follows:

"Spermatic duct apparently divided 4 inches below internal ring."

Plaintiff's Exhibit B is the hospital's record of the plaintiff's stay in Union Hospital for the operation performed by Dr. D. H. Downey. The foregoing words were deleted by the court before being admitted into evidence. Dr. Downey was not called as a witness in the case, nor was his deposition taken.

The court deleted the words referred to because in the court's mind they were ambiguous and would permit the jury to unduly speculate as to the actual condition present at the time of the second operation performed by Dr. Downey.

The inference raised by the plaintiff's testimony was directed to the claim that the spermatic cord was negligently cut by the defendant in the performance of the operation on March 3, 1960, thereby cutting off the blood supply to the testicle, causing it to atrophy and making it necessary to remove it.

The language used by Dr. Downey does not indicate that the cord was severed. The finding was that the duct was *apparently* divided. This might have been a horizontal division or a longitudinal division. The duct might have been divided longitudinally without severing the artery. The fact that the testicle was 2.5 cm. x 2 cm. x 1.5 cm. in size at the time of removal would indicate that the blood supply was not cut off. If it had been, the testicle according to the only medical evidence offered on this point, would have resulted in necrosis or death of the testicle tissue.

The use of the word "apparently divided" indicates to the court that the doctor was not sure of the actual condition found. If the cord was actually divided there was no need to use the word "apparently." If it had been omitted, the finding would have been "spermatic cord divided about 4 inches below internal ring."

Dictionaries contain many definitions of the word "apparent," an adjective. There are few of the word "apparently," an adverb. In the court's mind, the word "apparently" as used by Dr. Downey in this exhibit was the same as if he had used the words "*seemed* to be divided."

The word "apparent" has two different and distinct meanings. It can mean capable of being clearly seen or understood, or it can mean seeming as opposed to real. (See Webster's 3rd New 1961 International Dictionary: 1957 Dictionary by Bergen and Evans.)

The court feels that in the absence of testimony of Dr. Downey as to the meaning of the language used, it was correct in deleting the words referred to in the exhibit, and therefore this alleged ground of error is overruled.

The objection to the defendant's second special request for a charge to the jury before argument is directed to the use of the word "positive" in the second paragraph of the charge, composed of one sentence. In so far as it relates to the issue raised, it reads as follows:

"So if you find that the defendant, Dr. Paul W. Ebert, did not commit some *positive* act that physicians and surgeons of ordinary skill, care and diligence would not have committed . . ., then your verdict must be for the defendant. The portion omitted from the sentence quoted reads: 'and you also find that he did not omit to do something that such physicians and surgeons would have done in his treatment of the plaintiff.' "

The charge is directed to acts of commission and omission. The first paragraph states the law correctly as to the general rule on malpractice. There can be no serious argument as to the applicability of the second part of the paragraph relating to acts of omission to the instant case.

In a case where a physician is charged with malpractice based on acts of commision, the act must have been one that physicians and surgeons of ordinary skill, care and diligence would not have done under the same or similar circumstances.

In common parlance, the word "positive" means certain, or definite. Substituting either of these words for the word "positive" in the instruction complained of the jury was told in effect that as to acts of commission, it must find for the

defendant if it found he did not commit a certain or definite act which physicians or surgeons would not ordinarily do under the same or similar circumstances. If the word "certain" or "definite" had been used instead of the word "positive" there would have been no doubt as to this being a correct charge. (See Fess Instructions to Juries 1952-1960, Supplement, Page 199, Sec. 76-13.)

In *Blyhl* v. *Village of Waterville*, 58 N. W., 817, 57 Minn., 115, 47 Am. St. Rep., 596, the court had occasion to construe the term "positive duty" in connection with the obligation of a municipality to keep its streets in proper repair.

The court held in that case that it was a positive duty and not a discretionary duty for a municipality to keep its streets in proper repair. In defining the term "positive duty," it held such a duty only required "the diligence, care and skill that an ordinarily prudent person having a similar duty to perform would employ."

The court concludes from the foregoing that the word "positive" in the requested charge did not add to or detract from the definition of malpractice which the court gave in special request No. 1 and in its general charge. In addition the court defined "preponderance of the evidence" correctly in its general charge and stated that this could be based on direct or circumstantial evidence, or both. A correct definition of circumstantial evidence was also given.

The court therefore concludes that no error was committed in giving special request No. 2.

As to misconduct of defense counsel in his argument to the jury, the defense counsel included the following in his argument to the jury:

"This isn't a case where you should let sympathy have anything to do with it because if you sympathize with Mr. Haines to the extent you return a verdict for him when you are convinced really that Dr. Ebert did nothing wrong, then we have a verdict in the record in a malpractice suit against a surgeon in the community. We have articles in the newspaper and you can see what will happen to Dr. Ebert's reputation."

At this time counsel for the plaintiff objected and was sus-

564

tained and that portion relating to newspapers was striken by the court in the following language:—

"The part relative to the newspaper may go out."

Then counsel continued as follows:

"Anyway you decide this on the facts."

The court is of the opinion that this manner of argument was objectionable but not prejudicial in view of the court's ruling on the objection.

A verdict should not be reversed for misconduct of counsel if the alleged improper argument is striken by the court and such statements did not influence the jury. (See *Railway* v. *Burr*, 82 Ohio St., 129, 92 N. E., 27.)

The motion for a new trial is accordingly overruled. Exceptions will be noted.