KATHERINE HENSON v. KANSAS CITY, Appellant.

Division Two, March 17, 1919.

1. **APPEAL: Affidavits Dehors The Record: Motion to Strike Out Briefs.** Affidavits, purporting to set forth the physical condition of plaintiff in a personal injury case, made at a date long subsequent to the trial and contradictory of the evidence upon which the verdict was rendered, filed in the appellate court, will be stricken from the files. But appellant's brief, if the objectionable matter contained in the affidavits has not been interpolated in any spirit other than that of bringing about what, counsel conceive justice demands, will not be stricken out.

2. **NEGLIGENCE: Defective Plan: Exception.** A city may not be liable for personal injuries directly caused by a defective plan for excavating a street, but may be liable for injuries due to a defective or negligent execution of the plan. But the rule has its limitations, among which is this: where the plan adopted by the city is so manifestly dangerous and unsafe, or leaves the street in a condition so obviously dangerous and unsafe, that a court can say so as a matter of law, then the city is liable for an injury produced by such patently dangerous plan as its proximate cause.

3. ————: ————: **Maintaining Dangerous Condition.** But the rule of non-liability of the city for a personal injury directly caused by a defective plan has no application where no one was injured as a result of the execution of the adopted plan for grading a street by so excavating it as to leave a perpendicular wall of clay ten feet high along the building line, and where the negligence consisted in leaving this perpendicular bank overhanging the pathway used by pedestrians, for six weeks or two months, with-

out bracing it or giving notice to the public of its dangerous character, after it had begun to cave at different places.

4. ———: Fire and Coasting in Street: Unlawful Act. The city in excavating a street left perpendicular clay walls along the building line ten feet high or more. The night was cold and plaintiff had gone to a 'point in the excavation to chaperon her sister, who, with other young persons, had resorted to the excavation to coast on sleds. Some persons had made a fire on the sidewalk space near the wall, and plaintiff, having assisted her sister with a sled, stepped back on the space near the fire, and almost instantly a section of the clay wall caved and fell, striking her, causing the injuries for which she sues the city. *Held*, that plaintiff, in standing by the fire built by others in violation of the city ordinance, was not doing an unlawful act, but she was lawfully upon the street and at the time she was hurt was not engaged in an unlawful act.

5. ———: Patent Danger: Question for Jury. Where there is substantial evidence that plaintiff did not have knowledge of the dangerous situation, the question of whether the danger was apparent to her, or whether she saw or under the circumstances ought to have seen the overhanging danger, is one for the jury.

6. ———: Evidence: Simulated Injuries. It is improper for plaintiff's witnesses, expert or lay, to testify that her tears while on the witness stand and her symptoms of injuries in the court room are not feigned or simulated; and where the verdict seems large, such testimony is error. One witness may not pass upon the credibility of another.

7. ———: Refused Instruction. Appellant cannot complain that the court refused its instruction if the court of its own motion gave one that presented the same identical defense.

8. ———: ———: Ordinary Care. Where the defense is contributory negligence and there is some evidence to sustain the plea, it is error to refuse an instruction telling the jury that if plaintiff was not exercising ordinary care under the circumstances and such lack of care directly contributed to her injury she cannot recover.

9. INSTRUCTION: Ambiguous. An instruction should not be ambiguous upon a vital contested issue.

10. VERDICT: Excessive: $20000. A verdict of $20,000 for a young unmarried woman, whose leg was broken both above and below the knee and is permanently shortened an inch and a half and who received other nervous injuries permanent in character, was excessive.

Appeal from Jackson Circuit Court.—*Hon. William O. Thomas*, Judge.

REVERSED AND REMANDED.

*E. M. Harber* and *Francis M. Hayward* for appellant.

(1)   The demurrer to the evidence should have been sustained.   (a)   Because, if the fall of the bank of clay was due to its being left perpendicular and not to the fire built near it, the fall was due to the plan of construction adopted by the city and for the adoption of the plan the city was not liable. Ely v. St. Louis, 181 Mo. 729; Lansing v. Toolan, 37 Mich. 152; Urquhart v. Ogdensburg, 91 N. Y. 67; McIntyre v. City of Pittsburg, 238 Pa. St. 524; Foster v. St. Louis, 71 Mo. 157; Walters v. Omaha, 76 Neb. 865; Hays v. City of Columbia, 159 Mo. App. 431. (b)   Because if the city was negligent in leaving the bank of clay ten feet high in an outlying part of the city, the defendant was a grown womas nineteen years of age and had precisely the same opportunity to know of its defective condition that the city had, and was therefore guilty of contributory negligence as a matter of law in standing close to such a bank when it fell. Cohn v. City of Kansas, 108 Mo. 393; Wheat v. St. Louis, 179 Mo. 578; Woodson v. Met. St. Ry. Co., 224 Mo. 685; Craine v. Met. St. Ry. Co., 246 Mo. 393; Durkin v. Troy, 61 Barb. (N. Y.) 437. (c)   Because respondent was not in a lawful use of the street when injured. Eastburn v. United States Express Co., 225 Pa. St. 33; Reusch v. Licking Rolling Mill Co., 118 Ky. 369; Williams v. St. Joseph, 116 Mo. App. 299. (2)   The court erred in the admission of testimony offered by respondent and objected to by appellant. Halliman v. Cabanne, 43 Mo. 568; Hunt v. Gas Co., 8 Allen (Mass.), 169. (3)   The court erred in refusing Instruction 2 asked by appellant. Coffey v. Carthage, 186 Mo. 573.   (4)   The court erred in refusing In-

struction 3 asked by appellant. Miller v. Kansas City, 157 Mo. App. 533; Pyburn v. Kansas City, 166 Mo. App. 150. (5) The verdict of the jury was so excessive and unjust that it shows on its face that it was the result of bias and prejudice on the part of the jury against appellant. Lessenden v. Mo. Pac. Ry. Co., 238 Mo. 247; Yost v. Railroad, 245 Mo. 219; Partello v. Railroad, 240 Mo. 122; Applegate v. Railroad, 252 Mo. 173; Hinkle v. C. B. & Q. Ry. Co., 199 S. W. 227.

*Piatt & Marks* for respondent.

(1) The doctrine of non-liability for the exercise of a governmental function does not apply, because plaintiff's injuries were not occasioned by an unwise plan of legislation or a defect thereof, but because a large piece of unsupported and unprotected earth abutting upon the sidewalk fell upon her while she was upon the sidewalk of an open public street. It was no part of the legislative plan for grading the street that a three-ton mass of earth should fall upon plaintiff or other pedestrains on the street and injure her, or them; nor can the wildest stretch of imagination make it such. Rupenthal v. St. Louis, 190 Mo. 225; Straub v. St. Louis, 175 Mo. 416; Campbell v. Chillicothe, 239 Mo. 455, l. c. 461; Shippey v. Kansas City, 254 Mo. 23; Wiggin v. St. Louis, 135 Mo. 558. (2) Respondent did not have the same opportunity to know the defective condition that the city had. The city has several hundred miles of streets and hundreds of instances in which unsupported perpendicular walls of earth abutting upon streets ultimately crumble and fall. This court declares such happenings the result of natural law. Beck v. Brewing Co., 167 Mo. l. c. 200. The city has an egineering and scientific department especially skilled, informed and trained as to such matters. The respondent is not the possessor of such experience or information. The occurance was in the night time; the wall was barely discernible; the light made by the fire was be-

tween her and the wall. Defects or dangers in the wall were not discernible; the boys standing against the wall saw none. Their first knowledge of it was when they felt it pushing out against them and they jumped. She had a right to assume that the city knew whether the wall of earth was dangerous and when it would fall, and whether it would fall into pieces of sufficient size to injure her. (3) Plaintiff was not coasting when the injury was received nor is there a word of testimony in the record that she at any time that evening coasted; she was there acting as a chaperon for her younger sister and her younger friends. The evidence discloses that plaintiff had nothing whatever to do with either starting or maintaining the fire, nor was she warming by it. The coming of plaintiff to the fire was not an unlawful act within the ordinance. Appellant contends that Dr. Hamilton was erroneously permitted to testify to a conclusion, the question being, "Did you see any evidence of Miss Katherine feigning these tears?" and the answer being, "I couldn't say that there was any evidence that she is feigning." The question neither calls for a conclusion nor does the answer express one.

FARIS, J.—Plaintiff sued defendant for personal injuries occurring to her, it is averred, from defendant's negligence. On a trial had before a jury she had judgment for damages in the sum of $20,000, and therefrom defendant appealed in due and ancient form.

The salient facts are few and simple; while the details may to an extent be left for statement in connection with the discussion of the points urged for reversal. The outstanding facts run thus: Defendant, pursuant to solemn ordinance, had by contract caused to be graded a street called 49th Street, where this street traverses an addition known as "Prospect Hill Addition." This grading was completed in October, 1914, some six weeks or two months before plaintiff was injured, on December 14, 1914. In grading this

street pursuant to the plans adopted and carried out
by the defendant, a uniform cut was made the width
of the whole street, including the sidewalk space, to
the property line; so that when the grading was done,
there were left along the property line perpendicular
banks, or walls of earth or clay, from ten to twelve
feet high. A wagonway twenty-six feet wide had been
improved at the point of the injury on 49th Street, for
vehicular traffic, though the sidewalks had not been
made. Spaces on both sides of the street, called ''side-
walk spaces'' in the record and which were each 17 feet
wide, had been left. These sidewalk spaces were at the
time of plaintiff's injury being used by pedestrians living
in the vicinage to go to and from their homes, to work,
to the street-car lines, and to stores in the neighbor-
hood, whereby a path was trodden out. Prior to the
time of plaintiff's injury a part of this perpendicular
clay wall had caved off and fallen across the sidewalk
space and across the path made by pedestrians and
above mentioned, at a point thereon only a few feet
from the place whereat plaintiff was hurt.

Plaintiff, a young woman nineteen years of age,
then working for a real estate concern in a minor cleri-
cal capacity at a salary of six dollars a week, had gone
to a point on 49th Street between Prospect Avenue and
Wabash Avenue to chaperon her sister, who with other
young persons had resorted to this part of 49th Street
to coast on sleds thereon. There was another party of
young folks there also coasting. The night was cold—
only three degrees above zero—and some of the latter
party had made a fire on the sidewalk space for the
purpose of warming. In the making of this fire plaintiff
had no part. The size and location of the fire were
disputed questions, since the chief defense of the city
upon the facts is that this fire thawed the frozen clay
bank and caused it to fall. The evidence of plaintiff
tends to prove that this fire was about a foot in diame-
ter, and a foot or a foot and a half in height; that it
was from three to five feet distant from the perpendi-

cular wall of the cut and of negligible intensity. The defendant's evidence tends to show that it was from a foot to three feet and seven inches from the wall (the city's measurements showed 3.6 feet, exactly) and that it was some two feet in height and twenty inches in diameter and of such heat and intensity as to convert the clay of the wall which fell, into burnt clay of a brick-like hardness and consistency.

Plaintiff, just a few seconds before she was hurt, had been in the middle of the street with a sled for her young sister. After delivering this sled to the sister she stepped back on to the sidewalk space near the fire for the purpose of warming, or of observing her sister and the other young people while they were coasting. Almost instantly thereafter a frozen section of the clay wall caved and fell and struck plaintiff, hurling her to the ground and breaking her right leg in two places. The upper fracture was a comminuted fracture of the femur near the hip, and the lower consisted in fractures of both bones near the ankle. It is averred that the muscular tissues of both legs were seriously crushed and bruised, and the testimony tends to sustain this averment.

Plaintiff was confined in a hospital for some seven weeks as a result of the injuries she sustained, and thereafter was confined to her bed at her home for some ten or eleven weeks. Her right leg was permanently shortened an inch and a half, and other conditions appeared which were nervous in character and which are averred to be incidents of shock and nerve injury and to be permanent. There was as stated some crushing, or mashing and bruising of the fibres of the muscles of both legs, which the evidence tends to prove has (at least till an operation shall correct it) permanently affected movements in certain ways of both of plaintiff's legs and causes her and will continue to cause her to limp. Upon the question of whether the nervous condition was permanent the medical experts

were *dubitante*. It was agreed by the expert testimony, as we read it, that the shortening of the right leg would cause a permanent limp, which, however, might be largely taken care of by the adjustments in the bones of the pelvis, at the expense of some slight distortion of the spine in the adjustment process. On this single phase of injury to the right leg the medical expert for defendant said that "there ought not to be anything more than a little limp, possibly not that."

Some further facts will be found set out in the course of the expression of our views upon the divers contentions of error urged.

I. We are met with a motion by respondent to strike the brief of appellant from the files, for that it contains as exhibits thereto three certain affidavits purporting to set forth the physical status and condition of plaintiff, as of a date long subsequent to the trial and the taking of this appeal. This motion coming in too near the day of argument to allow time for careful consideration, was by us taken with the case. Meeting it therefore on the threshold of the case, we must needs dispose of it before reaching the merits.

**Affidavits. Extra Judicial**

It is so plain that we may not consider affidavits filed here in an action at law after the appeal is taken, when such affidavits contradict the solemn evidence upon which the verdict was rendered that neither authority nor exposition is necessary to bolster up the assertion. Lately, in a case more flagrant by far than that made by the showing in the instant case, and one in which the extra-judicial showing of conditions subsequent to appeal were presented formally in a common law proceeding and not *ex parte* as here, we refused to be bound thereby in the case appealed. [Callicotte v. Railroad, 274 Mo. 689, 204 S. W. 528.] We therefore refuse to consider the affidavits filed and content ourselves with striking them from the files. But, we overrule the motion to strike the brief of defendant from

the files, since there is nothing to indicate that the objectionable matter therein contained was interpolated in any other spirit than that of bringing about counsel's conception of the doing of justice in the case. Counsel's client ought not to be penalized on account of counsel's making every effort consistent with honesty and a proper respect for the courts to protect their client's interests and obviate what they may honestly deem to be a gross miscarriage of justice. That counsel may in doing so, and in an effort to prevent justice from becoming "a hissing and a by-word," sometimes go out of the beaten paths which justice now treads, is not to their discredit.

Neither, on the other hand, are we saying that if we could consider these affidavits they show any fraudulent overreaching of the courts. They do not necessarily comport any such thing. They would merely— even if they be true—tend to show the ordinary errors in prophecies of future physical conditions, due to mistaken expert evidence and to the psychological phases of the situation presented.

II. Coming to the strenuously urged contention of defendant that plaintiff made out no case for the jury and that the demurrer of the city to the evidence ought to have been sustained, we meet a close and difficult question. As we understand defendant's several contentions upon this point, they are (a) that the falling of the wall or bank of the cut or excavation was due to a defect in the plan of the work, and not to any negligent or defective execution of the work itself, which *per contra* was done precisely according to the plan; (b) that plaintiff in standing by a fire built by other persons in violation of the city ordinances, was doing an unlawful act and therefore cannot recover, and (c) that the danger of the clay bank's falling being equally as apparent to plaintiff as it was to defendant, she was guilty of contributory negligence as a matter of law in assuming the position she was in when she was injured.

There is no doubt that the doctrine of a city's non-liability when the injury is directly caused by a defective plan, in contradistinction to a defective or negligent execution of that plan, exists in the law. The books are fairly full of cases holding this view. [*Vide*, Hays v. Columbia, 159 Mo. App. 431; Lansing v. Toolan, 37 Mich. 152; Davis v. Jackson, 61 Mich. 530; McIntyre v. Pittsburg, 238 Pa. St. 524; Urquhart v. Ogdensburg, 91 N. Y. 67; Hoyt v. Danbury, 69 Conn. 341; Watters v. Omaha, 76 Neb. 855; Foster v. St. Louis, 71 Mo. 157.] Nor is the doctrine bottomed on unstable or unsound legal foundations; for when the city has, through its officers in good faith exercised its best judgment in devising a plan of doing a given work, this judgment ought not to be subjected to the incongruous and changeable rules of alleged safety arbitrarily devised by shrewd counsel to fit the actionable necessities of every casualty.

*Defective Plan.*

But the rule has its limitations; and where the plan adopted by the city is so manifestly dangerous and unsafe, or leaves the street in so obviously a dangerous and unsafe condition that a court can so say as a matter of law, then the city is liable for an injury produced as the proximate cause of such patently dangerous plan. [Hinds v. Marshall, 22 Mo. App. 208; Gould v. Topeka, 32 Kan. 485; Teager v. Flemingsburg, 109 Ky. 746; Healy v. Chicago, 131 Ill. App. 183; Conlon v. St. Paul, 70 Minn. 216.] But we do not think this rule has any application to the facts shown by this record. No one was hurt from the city's following the mere plan of grading the street by so excavating it as to leave a perpendicular wall of clay ten feet, or more, in height. The negligence consisted in leaving this clay bank overhanging the pathway used by pedestrians, for some six weeks, or two months, without bracing it, or without in some wise giving notice to the public of its dangerous character. For, while as forecast above there is lodged in the city a discretion as to the time at which and the place through which it makes im-

provements, yet when this discretion has been exercised and the street has been made, the duty of maintaining it in repair so that it will not become a menace to the public is not governmental, but ministerial. [Hines v. Lockport, 50 N. Y. 238; Twist v. Rochester, 165 N. Y. 619; Collins v. Council Bluffs, 32 Iowa, 324; Jones v. Henderson, 147 N. Y. 120; Circleville v. Sohn, 59 Ohio St. 285; Hand v. Brookline, 126 Mass. 324.] And an action will lie for injuries caused by dangerous defects in a street, which defects the city suffers to remain after reasonable notice of the existence thereof; although such defects developed from well-understood physical laws operating upon the conditions produced by the plans which the city adopted. Here, the perpendicular bank did not at once cave. It might indeed never have caved. But when it had been subjected to the mutations of the weather for some six weeks, it began to cave in other near and similar places and thus gave notice to the city of its dangerous conditions. Thereupon it became the duty of defendant city either to take steps to remedy the defect, or to advise those using the street of the existence of such defect, so that they might protect themselves against it.

III. Coming to the next urged reason of non-liability, we are likewise of the opinion that it is untenable under the facts in this record. Plaintiff had nothing to do with making the fire, none of the party whom she was chaperoning had anything to do with this violation of the ordinance. The fire had been made by others and she was standing near it for a few seconds observing her sister and others coasting, when the bank fell and she was hurt. Cases called to our attention by learned counsel wherein the facts were that persons were hurt while unlawfully coasting upon streets by alleged obstructions in such streets are clearly not in point. If it be urged that her act in chaperoning these young people who were coasting at a place forbidden by ordinance made her

*Unlawful Act.*

as guilty as they were, or that she aided and abetted this violation of an ordinance by bringing a sled to her young sister, the obvious answer is that the coasting was not the proximate cause of her injury. Since plaintiff was lawfully upon the street and when hurt was not engaged in any unlawful act, the duty *caeteris paribus* was owed her by the city to make the street on which she stood reasonably safe for her use.

IV. Lastly, upon this phase, it is urged that since plaintiff was *sui juris,* she could and should have seen this overhanging bank and have realized its potential danger, which danger, it is urged, was just as apparent to her as it was to the defendant. The record shows that plaintiff had never been along this street or sidewalk-space since it was graded; that she had not seen the patent evidences of its recent caving at other near points, because she had at the instant before she was hurt approached this wall from the center of the street; that it was night and except for the fire in question, very dark, so that she saw only some five or six feet of the wall and this portion but dimly, and only by the light of this small fire.

**Patent Danger.**

On her evidence on this point, of which there was some corroboration, and some contradiction, it became a question of fact for the jury and not a question of law for the court, as to whether the danger was apparent to her, or whether she saw, or ought under the circumstances to have seen, the potential menace of the situation. We are, upon the whole, of the opinion that there was a case made for the jury, and that each of the defendant's three contentions to the contrary should be disallowed.

V. In the course of the examination of Dr. Hamilton (who was a witness for plaintiff and who, as plain-

tiff's family physician, had attended her professionally and treated her for the injury in controversy here), he was asked, over defendant's objection, this question: "Do you see any evidence of Miss Katherine's (plaintiff's) feigning these tears?" After some discussion on the point of the admissibility of this question, it was held by the trial court to be a proper one. Whereupon, counsel repeated it to the witness, changing the verbiage thereof slightly, thus: "Answer, what if any evidence you found of her feigning these tears?" The witness answered, "I could not say that there was any evidence that she is feigning."

*Feigning Tears.*

It is difficult to ascertain from the record whether counsel for plaintiff was asking the above question with reference to plaintiff's attitude upon the witness stand, or as to her condition while the witness was treating her, or as to her attitude while sitting in court and observing and taking part in the trial. And while the sequence with which the witnesses testified in the case would seem to exclude the first hypothesis, there are yet indicia in the record that the question had reference to the attitude of the witness while taking part in the trial. For counsel for defendant had before asked that the jury be discharged on account of the behavior of the plaintiff. Regardless of these hypotheses, the question invaded the jury's province. There was a general denial in the case; the extent of plaintiff's injuries and the question of their permanence vel non were sharply contested, and it is here and now most strenuously contended that the verdict herein is excessive. The evidence in the case, the demeanor of the witness on the stand and the question whether or not plaintiff was malingering and feigning as to the symptoms of her injuries were questions solely for the jury. Clearly, one witness may not pass upon the credibility of another witness. [Hunt v. Gas. Co., 8 Allen (Mass.) 169; Holliman v. Cabanne, 43 Mo. 568.] Neither may an expert witness give his opinion upon the existence, or non-existence of the very matters

and conditions which are vital issues in the case. [Deiner v. Sutermeister, 266 Mo. 505.]    The question was improper, and the answer probably contributed largely to the swollen verdict in the case.

VI.    Defendant asked, and now complains that the court refused the below instruction, to-wit:

"The court instructs the jury that although you may find from the evidence that plaintiff was injured at the time and place claimed by her, yet if you further find from the evidence that the bank of clay which fell upon her had, before the accident been frozen and thereby rendered the north side of Forty-ninth Street, between Prospect and Wabash avenues, reasonably safe for travel, and that said bank was thawed loose at the time of such accident by the building of a fire, the evening of the accident, and that it thereupon fell on plaintiff, you are instructed that a sufficient time had not elapsed before the accident to impart to the city notice of such condition of the bank, and that plaintiff cannot recover, and your verdict must be for the defendant, Kansas City."

*Instruction.*

However, since the court gave *sua sponte* the below instruction, in all material substance similar to that which was refused, no error enures from the failure of the court to give the above instruction.    For the instruction given by the court on this theory of defense reads thus:

"The court instructs the jury that if they believe from the evidence that on and before December 15, 1914, the embankment in question was reasonably safe for persons to pass on and along the north side of Forty-ninth Street, and if you find from the evidence that on said date a fire was maintained adjacent to the part of the embankment which fell, and that (*sic*), the direct result of such fire, if any, said bank was caused to fall, then the defendant city had no notice thereof and you must find for defendant Kansas City."

While there is a patent but harmless clerical error in the above instruction, the meaning of it is plain. It is also plain that it presents to the jury the identical defense presented by the instruction refused. We disallow this contention.

VII.   Defendant asked and the trial court refused the below instruction, to-wit:

"The court instructs the jury that although you may find from the evidence that plaintiff was injured at the time and place claimed by her, yet if you find from the evidence that plaintiff, by standing near the embankment which fell upon her while the bank was subjected to the heat of a fire built near it, and that said fire caused said bank to fall, did not exercise ordinary care under the circumstances and that such lack of care directly contributed to her injury, then plaintiff cannot recover, and your verdict must be for defendant, Kansas City."

*Ordinary Care.*

We think this was error.   There were both plea and proof upon defendant's part of contributory negligence.   Plaintiff was *sui juris;* and while she says that she could not see the clay wall, except by the light of the bonfire, which illuminated only some four or five feet of it, and thus as we have ruled made a case to go to the jury, there was countervailing testimony adduced on defendant's part which tended to prove that this fire was of such size and character that it so lighted up this clay bank as to make its menace apparent.

VIII.   It is also urged that instruction C2, which was the chief and (except for a mere formal instruction withdrawing certain evidence from the jury) the only instruction asked by plaintiff, is erroneous, for that it assumes as true one of the vital, contested issues of the case.   That is to say, that it tells the jury that the clay wall in question was reasonably certain to fall.   It is a close and difficult question whether the language and gram-

*Ambiguous Instruction.*

matical construction of this instruction makes it susceptible or not to the criticism urged. The law is well settled in favor of defendant's abstract contention. [Crow v. Houck's Ry., 212 Mo. 589; Coffey v. Carthage, 186 Mo. 573; Miller v. Busey, 186 S. W. 983; Ganey v. Kansas City, 259 Mo. 654.] It is only the language of the instruction, therefore, which makes the point doubtful. The instruction is, to say the least of it, ambiguous. Since the case must be reversed upon other grounds, we need not say more upon the question, for doubtless learned counsel for plaintiff will be advised upon another trial to so recast this instruction as wholly to obviate the criticism urged.

IX. We are also of the opinion that the verdict is excessive. This condition can also be corrected upon a new trial, in the even that the triers of fact do not see fit to do so of their own initiative. For the errors pointed out, let the case be reversed and remanded for a new trial not inconsistent with what we have herein ruled.

All concur, *Williams, P. J.,* in result and in all except paragraphs one and nine.