SWAIN *v.* CITY OF NASHVILLE.

(*Nashville,* December Term, 1935.)

Opinion filed April 4, 1936.

100

EWING & EWING and JEFF McCARN, all of Nashville, for plaintiff in error.

JACK KEEFE and R. L. ALEXANDER, JR., both of Nashville, for defendant in error.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

James H. Swain was accidentally killed while riding in an automobile as a guest of John Inman. The automobile skidded and plunged through the railing of the Church street viaduct, in the city of Nashville, to the railroad yard 30 feet below. The accident took place on November 12, 1933, at about 3:30 A. M., at a point on the viaduct where the roadway somewhat narrows. Street car tracks cross the viaduct, and the left wheels

of the automobile were in the south track while the right wheels were near the south, or right-hand, sidewalk. The roadway and track were damp and the automobile was running about 30 miles an hour when it came to the narrowing roadway, which is at the junction of the concrete construction at the west end of the viaduct with the original iron section in the middle. Inman, who was driving the automobile, turned to the left to avoid the shoulder caused by the narrowing roadway. The automobile skidded and mounted the 3¾-inch curb to the sidewalk and plunged through the iron guard rail to the railroad yard below.

The gravamen of the complaint is that the curb to the sidewalk was not high enough to stop the skidding automobile and that the iron guard rail was not strong enough to prevent the automobile from plunging through it. The insistence is that it was the city's duty to have a curb and rail there that would prevent such an accident as did occur.

The city filed a plea of not guilty. The trial judge directed a verdict, at the close of plaintiff's evidence, upon motion of the city, and dismissed the suit. On the appeal of plaintiff to the Court of Appeals that court affirmed the judgment entered in the trial court. Thereupon, petition for *certiorari* was filed in this court, and was granted and the case set down for argument.

In *Gainsboro* v. *Gore,* 131 Tenn., 35, 173 S. W., 442, it was held that to construct and maintain its streets in a reasonably safe condition is a corporate duty, and a city or town is answerable for a breach of that duty. It is the recognized rule, however, that a city or town is not an insurer against accidents upon its streets and sidewalks, but is bound to use only ordinary care to keep

them in a reasonably safe condition for persons traveling in the ordinary modes, while exercising reasonable care and caution. *Poole* v. *Jackson*, 93 Tenn., 62, 23 S. W., 57.

■ The erection of a 3¾-inch curb by the city of Nashville on the Church street viaduct, in accordance with the plan adopted by it, cannot be held to subject it to liability for resulting injuries to individuals, unless the curb as planned and erected is so manifestly dangerous that a court can say, upon the facts, as a matter of law, that it is dangerous. *Gould* v. *Topeka*, 32 Kan., 485, 4 P., 822, 827, 49 Am. Rep., 496; *Teager* v. *Flemingsburg*, 109 Ky., 746, 60 S. W., 718, 53 L. R. A., 791, 95 Am. St. Rep., 400; *Healy* v. *Chicago*, 131 Ill. App., 183; *McDonald* v. *Duluth*, 93 Minn., 206, 100 N. W., 1102; *Madison* v. *Ross*, 3 Ind., 236, 54 Am. Dec., 481; *Evansville* v. *Decker*, 84 Ind., 325, 43 Am. Rep., 86; *Watters* v. *Omaha*, 76 Neb., 855, 107 N. W., 1007, 110 N. W., 981, 14 Ann. Cas., 750, and note; *Gower* v. *Madisonville*, 182 Ky., 89, 206 S. W., 27; 5 McQuillin, Mun. Corp. (2 Ed.), sec. 1981; Annotation, 90 A. L. R., 1519.

In *Henson* v. *Kansas City*, 277 Mo., 443, 452, 210 S. W., 13, 16, the court said:

"But the rule [of nonliability] has its limitations; and where the plan adopted by the city is so manifestly dangerous and unsafe, or leaves the street in so obviously a dangerous and unsafe condition that a court can so say as a matter of law, then the city is liable for an injury produced as the proximate cause of such patently dangerous plan."

In *Gould* v. *Topeka, supra,* the court said:

"Where a street, as planned or ordered by the governing board of a city, is so manifestly dangerous that a

court, upon the facts, could say, as a matter of law, that it was dangerous and unsafe, the rule contended for by the defendant [nonliability for the defective plan] should not have any application, and the city should be held liable; but where, upon the facts, it would be so doubtful whether the street, as planned or ordered by the governing board of the city, was dangerous or unsafe or not that different minds might entertain different opinions with respect thereto, the benefit of the doubt might properly be given to the city; or rather to its governing board that planned or ordered that the street should be placed in such a condition, and the rule should be held to apply, and the city should not be held to be liable.''

In *Teager* v. *Flemingsburg, supra,* the court adopted, substantially, the above language from *Gould* v. *Topeka.*

From the proof adduced, it does not appear to the court that the curb here in question, planned and erected by the city, was so manifestly dangerous as to leave the street over the viaduct in an unsafe condition.

It was the duty of the city to maintain guard rails on the sides of the Church street viaduct. *Niblett* v. *Nashville,* 59 Tenn. (12 Heisk.), 684, 27 Am. Rep., 755. It was not its duty, however, to maintain guard rails of sufficient strength to prevent all accidents. In *Roberts* v. *Eaton,* 238 N. Y., 420, 144 N. E., 667, 36 A. L. R., 411, the court said:

''While the general use of motor vehicles has developed a new class of risks, it is not incumbent on the towns to anticipate and guard against every danger that may attach to the operation of automobiles over country highways. To impose on towns the burden either of constructing substantial barriers at every point of possible

danger or of paying damages when unusual accidents occur which such barriers might have prevented would be to advance the present measure of liability beyond the rule of ordinary care into the field of insurance against accidental injury or death. Where it is unreasonable to charge the town with the duty of maintaining barriers sufficient to prevent all accidents, the court will declare nonliability as a matter of law.''

■ The obligation to erect a guard rail sufficiently strong to prevent automobiles from going through it is not imposed on a city. 7 McQuillin Mun. Corp. (2 Ed.), sec. 2993; *Swain* v. *Spokane,* 94 Wash., 616, 162 P., 991, L. R. A., 1917D, 754; *Briglia* v. *St. Paul,* 134 Minn., 97, 99, 158 N. W., 794, L. R. A., 1916F, 1216; *City of Dallas* v. *Maxwell* (Tex. Com. App.), 248 S. W., 667, 27 A. L. R., 927; *Tillman* v. *Toledo,* 23 Ohio App., 442, 157 N. E., 120; *Watkins' Adm'r* v. *Catlettsburg,* 243 Ky., 197, 47 S. W. (2d), 1032; Huddy on Automobiles (6 Ed.), sec. 701; Berry on Law of Automobiles (6 Ed.), sec. 1205.

■ ■ The city could not be expected to anticipate or provide against such an accident as the one in question here. That to do so would, as said by the court in *Tracey* v. *Minneapolis,* 185 Minn., 380, 241 N. W., 390, necessitate the construction of a wall of iron or concrete. The city was under no obligation to provide for everything that might happen, but only for such things as ordinarily exist, or such as may be reasonably expected to occur.

Our conclusion is that all of the assignments of error made on the petition for *certiorari* must be overruled, and the judgment of the Court of Appeals and the trial court affirmed.

Petitioner will pay all the costs of the appeal.