VINSON v. FENTRESS et al.—232 S. W. (2d) 272.

Western Section. At Jackson. May 3, 1950.

Petition for Certiorari denied by Supreme Court, July 15, 1950.

360

Clyde P. West and Harold Ratcliff, both of Memphis, for plaintiff-in-error.

Armstrong, McCadden, Allen, Braden & Goodman, and Albert Johns, all of Memphis, for Fentress.

James J. Pleasants, Jr., and Charles M. Crump, both of Memphis, for City of Memphis.

SWEPSTON, J. Plaintiff, Katherine Vinson, sued the defendants, Ethel C. Fentress and City of Memphis for personal injuries occurring when she fell on the

sidewalk in front of the building on Union Avenue owned by the first named defendant.

The case was tried to a jury. At the close of plaintiff's proof in chief a peremptory instruction in favor of Fentress was given and at the close of all the proof the same in favor of the City.

Plaintiff has appealed and assigned error as follows:

"I.

The learned Trial Court erred in directing a verdict in favor of the defendant, Ethel C. Fentress.

"II.

The Court erred in excluding from the evidence the City ordinances pleaded by the plaintiff upon the ground that they had no application to the suit.

"III.

The Court erred in sustaining the motion of the defendant, City of Memphis, made at the close of all the proof for a directed verdict in its favor.

"IV.

The Court erred in excluding from the evidence testimony of the plaintiff, Katherine Vinson, with reference to other drains of proper construction across the same sidewalk and in the same block.

"V.

The Court erred in excluding the evidence of the witness, Wilbur Curtis, with reference to the construction of the drain which injured the plaintiff and the construction of similar drains in the same sidewalk and in the same City block."

There is no dispute as to the manner in which the structure on which plaintiff alleges she was injured was

constructed and the way the same was maintained for many years. At one corner of the building owned by Fentress a downspout from the roof gutters comes down and connects with a trough which goes directly across the sidewalk to the curb where it empties into the street gutter. This trough is imbedded or countersunk in the sidewalk 5½ inches deep and is 13 inches wide except the top ¼ inch which is extended 1½ inches to each side so as to provide a shelf on each side of the trough over which is fitted into this space or slot an iron cover 16 inches wide and ¼ inch thick and extending 14 feet lengthwise the width of the sidewalk, so that the top of the metal cover is practically flush with the surface of the concrete walk. The metal cover is quite heavy weighing about two hundred pounds and requiring more than one average man to lift same from the slot. It is not bolted or riveted in any way to the top of the trough, depending on its weight to keep it in place. The upper surface is roughened to prevent pedestrians from slipping on it. The purpose of the structure is to prevent the discharge of roof water across the surface of the sidewalk.

The declaration in two counts charged common-law negligence and violation of certain ordinances. Under the common-law count it is alleged that the structure was owned and maintained by the defendants; that the metal cover was not secured in any manner to the sidewalk and that defendants should have known it was likely to slip or tilt.

The ordinances relied on relate to the care and condition of sidewalks and especially to Section 342 reading as follows: "Surfaces of Metal Drains in Walks to be Roughened. It shall be a misdemeanor to permit any

iron or metal drain across a sidewalk unless the top of such drain shall be roughened in an approved manner and be level or flush with the surface of the walk and securely bolted or riveted to the body of said drain.''

Emphasis is placed by plaintiff on the requirement that the metal cover be bolted or riveted to the body of the drain.

Plaintiff's proof in chief is that while she was walking on the sidewalk about ten P. M. in dry weather in insufficient light and was in the act of getting money from her purse, she stepped on the metal cover which appeared to be in place and the same tilted or slipped in some manner causing her foot to slip into the drain, as a result of which her ankle was sprained; that she and her companions had walked over and on this cover for several months and had never seen it out of place.

At the close of plaintiff's proof in chief she had not shown when or by whom the drain was constructed, nor that defendants had any notice that the cover had become loose or out of place in the slot, nor, if misplaced, how long the condition had existed, nor that there was any defect in the structure other than the fact that it was not bolted or riveted to the drain, if this may be said to be a defect.

We are of the opinion that under those circumstances the trial court properly directed a verdict as to defendant Fentress.

The case as to her falls definitely under our case of Harbin v. Smith, 168 Tenn. 112, 76 S. W. (2d) 107, wherein the declaration charged that the abutting property owner had maintained the sidewalk in such manner that tree roots had elevated a section of the concrete walk above the other sections over which plaintiff had tripped.

 Held, (1) no common-law duty rested upon the abutting owner to keep the sidewalk in repair, and he could not be held liable to travelers for injuries caused by defects which he had no part in creating, (2) nor could liability be fixed upon the property owner by an ordinance merely requiring abutting owners to repair side walks, because the City cannot shift its primary liability to maintain sidewalks to owners of abutting property, (3) such ordinances are for the benefit of the municipality in furnishing it a means of discharging its duty by enforcing the ordinance against the abutting owner, but are not for the benefit of the individuals composing the public.

The foregoing case is cited and quoted approvingly, in respect to this sort of an ordinance, in Hale v. City of Knoxville, Tenn. Sup., 226 S. W. (2d) 265, 267. See, also, Weeks v. McNulty, 101 Tenn. 495, at page 504, 48 S. W. 809, 43 L. R. A. 185, 70 Am. St. Rep. 693, where the rule as to maintenance of streets and sidewalks is recognized and distinguished from the class of cases wherein the rule of the common law, statute or ordinance imposes a duty designed for the benefit of the public as individuals.

Under that heading fall the cases of Adams v. Cumberland Inn Co., 117 Tenn. 470, 101 S. W. 428 (requiring fire escapes to be placed on buildings), City of Knoxville v. Hargis, 184 Tenn. 262, 271, 198 S. W. (2d) 555 (failure of the owner to maintain a lawful building awning which she was permitted to let overhang the sidewalk).

Plaintiff relies upon Osborn v. City of Nashville, 182 Tenn. 197, 185 S. W. (2d) 510, where the abutting owner painted the sidewalk in front of his premises for advertising purposes causing it to be slippery when wet, as a result of which plaintiff fell and was injured.

The case is not in point here, because it falls under the general rule of common law that one acting in a private capacity who changes the condition of a public thoroughfare without authority of law, so as to create a danger to the public, is liable to those who may suffer injury proximately caused thereby.

Therefore, since plaintiff as heretofore stated, failed to show who constructed the drain, the only question left for the court relates to maintaining the structure, which we have attempted above to dispose of.

We, therefore, overrule assignments I and II, and as to Fentress IV and V.

Next as to the City, when it went forward with its evidence it was shown that the structure was constructed by Fentress in the year 1923; that the only ordinance in effect then was what is called the "building code" enacted in 1912, which provided as follows:

"Leaders Not To Discharge on the Sidewalk

"(a) In no case shall the water from said leaders be allowed to flow upon the sidewalk but the same shall be conducted by pipe or pipes to the sewer.

"(b) When Sewer Exists.

"If there be no sewer in the street upon which such buildings front, then the water from said leader shall be conducted by proper pipes below the surface of the sidewalk to the street gutter."

that the structure was constructed according to this Code and it was the approved form of carrying water under the surface of the sidewalk where the street curb was not high enough to permit use of a round pipe; that the ordinance plead by plaintiff requiring that the metal cover over such a drain trough be bolted or riveted down was not enacted until the year following construction

of this structure; that the metal cover was quite heavy, in fact, too heavy for one average man to lift out of place the weight being around 200 lbs.; that it had been inspected from time to time by W. B. Fowler who has been City Engineer since 1919 who makes a practice of inspecting uptown streets and sidewalks and had inspected this sidewalk about a year before the accident and found no defects in this structure; that the cover is so designed and fitted into the slot that it would be almost impossible for it to move up and down on the sidewalk; that he had never seen the cover out of place and the City had received no complaints of it being out of place.

On cross-examination, Mr. Fowler admitted that it was possible for an automobile coming against the curb end of the cover to knock it out of place, but he said it was highly improbable; that a car would have to come in at a right angle to the curb line to strike the end of the cover, because at any other angle a mound or shelf of concrete built into the street gutter and extending out about 6 inches from the curb and sloped on the outer side would cause a wheel to slide away from the cover end. It was further shown by several people who have walked over this structure for years that none of them had ever seen the cover out of place or heard of same. This was shown also by plaintiff and all of her witnesses who testified on the point.

None of the above testimony was contradicted except the inference to be drawn from defendant's evidence that tends to show that the cover could not have slipped out of place, whereas the plaintiff's evidence is that it did slip or tilt.

Plaintiff's rebuttal consisted of testimony tending to show that similar drains across the sidewalk in other

parts of the same block had the metal cover bolted down. The Court excluded this evidence and excluded the ordinance of the year 1924 heretofore quoted, both as being immaterial.

Plaintiff was then allowed to amend and plead the building code sections heretofore referred to, which were in effect in the year 1923, and which calls for pipes to be run below the surface of the walk.

To sum up the plaintiff's contentions then as we understand them, they are—

(1) That the sidewalk ordinance of 1924 is applicable as to both defendants; that it is a maintenance ordinance which was continually violated over a period of 25 years and that the City had notice of the violation.

(2) That the building code existing in 1923 was violated because the drain trough is not a pipe; this violation existed both in the construction and the maintenance.

(3) That in any event even in the absence of a regulatory ordinance, the question of negligence in construction and maintenance should have been submitted to the jury.

Answering these propositions in order, we think as to (1) it is immaterial whether the sidewalk ordinance applied to structures built before 1924, for the reason that we have already held that ordinances of this nature are not enacted for the benefit of the public as individuals but solely for the benefit of the city in aid of its performance of its duty to keep the sidewalks reasonably safe for pedestrians.

Therefore, the rule applies that one not a beneficiary of a statute or an ordinance may neither base an action nor a defense on a violation thereof. Carter v.

Redmond, 142 Tenn. 258, 263, 218 S. W. 217; Chattanooga Ry. & Light Co. v. Bettis, 139 Tenn. 332, 338, 202 S. W. 70; Wilson v. Moudy, 22 Tenn. App. 356, 367, 123 S. W. (2d) 828; Webster v. Trice, 23 Tenn. App. 365, 374, 133 S. W. (2d) 621.

Therefore, plaintiff may not rely on the general rule that violation of a statute or an ordinance is negligence per se, entitling one to go to the jury on proximate cause.

For like reason, the plaintiff may not rely on the enactment of the ordinance of 1924 as evidence tending to show that the City considered existing unbolted or unriveted covers unsafe.

Furthermore, as shown under (3) below, the City is not obligated to use the safest possible method or appliances, but only to use ordinary care to make the streets and walkways reasonably safe for use in the ordinary way. It does not have to guard against all possible contingencies or possibilities.

Swain v. City of Nashville, 170 Tenn. 99, 103, 92 S. W. (2d) 405, wherein it was held that while it was the duty of the City to erect a guard rail at the sides of a viaduct, but not its duty to erect one that would absolutely prevent an automobile from running through it, or that would prevent all accidents. See Patton v. Texas & Pac. Ry. Co., 179 U. S. 658, 664, 21 S. Ct. 275, 45 L. Ed. 361.

For like reason we think the evidence showing that covers on other structures in the same block were bolted down was properly excluded.

As to (2) we think a reasonable construction of the building code as to "pipes" is that given by the City engineer; that where the height of the street gut-

ter permits, the City requires round pipes, but otherwise the shallow trough is used to conform to the insufficient height of the curb along the gutter.

A pipe is "Any long tube or hollow body of wood, metal, earthenware, or the like, used to conduct water, steam, etc." Webster's Unabridged Dictionary, (2d) Ed. (1949).

Yet even if this ordinance had been violated, the plaintiff could base no action thereon for reasons stated in (1) above.

As to (3), plaintiff's rights are therefore to be determined upon common-law principles. City of Memphis v. McCrady, 174 Tenn. 162, 124 S. W. (2d) 248; Carter v. Redmond, supra.

The general rule is that a city or town holds its streets in a private or proprietary and not a govermental capacity. It is not an insurer and is not absolutely bound to keep them safe, but does have an absolute duty to use ordinary care under the circumstances to keep them in a reasonably safe condition for persons traveling in the ordinary modes while exercising due care. Swain v. City of Nashville, 170 Tenn. 99, 92 S. W. (2d) 405; City of Nashville v. Brown, 25 Tenn. App. 340, 345, 157 S. W. (2d) 612, and authorities cited.

"To be actionable the obstruction must be dangerous, and the danger must be such as a reasonably prudent person would have anticipated as a natural and probable result."

Again, "Probability, not possibility, governs; that it is 'possible for some one out of many to trip over so light a projection in the sidewalk as is here involved does not make it dangerous." Forrester v. City of Nashville, 179 Tenn. 682, 685, 169 S. W. (2d) 860, 861.

In Illinois Cent. R. Co. v. Nichols, 173 Tenn. 602, 612, 118 S. W. (2d) 213, 217, the Court said: "In order to impute to the owner knowledge of a dangerous thing, or place, the danger therefrom must be such as is recognized by common experience, or might reasonably be expected or anticipated by a person of ordinary prudence and foresight. Negligence consists in a failure to provide against the ordinary occurrences of life, and the fact that the provision made (here the ventilated slat floor) is insufficient as against an event such as might happen once in a life time (here that this customer for tomatoes would enter this freight car wearing a soft and worn rubber heel, and twist it between the slats, and fall through the car door) does not make out a case of actionable negligence."

The judgment against the railway was reversed and the suit dismissed because a verdict should have been directed.

In our opinion the most that can be said of all the evidence here is that plaintiff has offered proof tending to show that the cover slipped or tilted and caused her injury and defendant city has offered evidence from which the contrary may be inferred.

But the mere fact of injury alone never raises a presumption of negligence. De Glopper v. Railway & Light Co., 123 Tenn. 633, 643, 134 S. W. 609, 33 L. R. A., N. S., 913; Memphis St. Ry. v. Cavell, 135 Tenn. 462, 187 S. W. 179, Ann. Cas. 1918C, 42; East Tenn. V. & G. R. Co. v. Stewart, 81 Tenn. 432; L. & N. Ry. v. Chambers, 8 Tenn. App. 226.

Plaintiff offered no evidence that the method and manner of the construction and maintenance of this metal cover was not safe or was ever suspected of being

unsafe, or that any one had ever known of its having been tilted or been misplaced, or that any one had ever been injured by it, or that any automobile had ever run against it and knocked or pushed it out of its slot. Nor is there any evidence that any accident had occurred on other drains of like construction.

We are, therefore, of opinion that there was no evidence of negligence of the City to be submitted to the jury and that the court properly gave a peremptory instruction in favor of the City.

All assignments are overruled and judgment of dismissal will be entered here with costs against plaintiffs-in-error.

Anderson, P. J., and Baptist, J., concur.