502

# CITY OF KNOXVILLE v. COOPER.—265 S. W. (2d) 893.

East Section.   November 6, 1953.

Petition for Certiorari denied by Supreme Court, February 11, 1954.

Max M. Morrison of Knoxville, for plaintiff in error.

Poore, Cox, Baker & McAuley, of Knoxville, for defendant in error.

McAMIS, P. J.  M. L. Cooper, Administrator of the estate of Alfred E. Wade, deceased, instituted this suit to recover for the death of the intestate, August 30, 1951, as he operated a motorcycle north on North Fourth Avenue in Knoxville.  The motorcycle overturned after passing over a manhole in the middle of the street, throwing Wade against the curb and crushing his skull.

The declaration charges that the City of Knoxville permitted the existence of a nuisance consisting of a depressed area in the concrete pavement which it had partially filled with tar or asphalt.  On motion of the plaintiff, the City was required to plead its defenses specially. It denied the existence of a nuisance, denied that it had created or permitted to exist a defective condition in the street or that it had failed to exercise due care in the maintenance of the street.  At the close of all the evidence the City moved for a directed verdict which was overruled, resulting in a verdict in favor of the Administrator for $5,000.  A motion for a new trial was made and overruled and the City has perfected its appeal in error to this court.  Since, for the reasons to be stated, we have reached the conclusion that the motion for a directed verdict should have been sustained we deal only with that question.

The accident occurred just before dark as the deceased, Mr. Wade, was engaged in delivering packages for his employers.

Mr. B. F. Galloway, a witness for plaintiff, saw him stop to deliver a package about a block and a half south of

the manhole which is located at a curve to the left about ninety feet north of the intersection of North Fourth Avenue and Pratt Street. After he had started up his motorcycle and traveled north on North Fourth Avenue the witness Galloway heard a noise like the scraping of metal on the pavement. After overturning at the manhole the motorcycle continued forward and collided with the car of the witness parked at the curb. After the deceased had been removed and after dark, the witness took a flashlight and traced skid marks between the automobile and the manhole. He found no skid marks south of the manhole.

F. B. Jones witnessed the accident from the front porch of his home. He saw the motorcycle, traveling at a speed of twenty to twenty-five miles per hour, go out of control four or five feet after it had passed over the manhole. He heard metal scraping against the concrete and saw sparks flying. His statement is to the effect that the section of pavement south of an expansion joint running crosswise of the pavement and just north of the manhole had settled slightly. As a result, the north edge of the manhole had settled more than the south edge. Shortly prior to the accident the City had placed tar or asphalt in and around the manhole but, according to Mr. Jones, there was a left a saucerlike depression an inch or an inch and a half in depth. The day of the accident was very warm and, at the time of the accident, the concrete was still hot and the tar soft. The imprint of the tire of the motorcycle in the tar was about one inch "at the deepest point". Whether this "deepest point" to which the witness referred was immediately adjacent to the edge of the section of pavement north of the expansion joint is not clear from the record.

Other witnesses for the plaintiff add nothing to the

description given by Mr. Jones as to the condition of the manhole and the pavement at the point in question.

For the defendant, Police Officer C. C. Sexton testified that he arrived to investigate the accident at 8:50 p.m., or twenty minutes after it occurred, and saw skid marks crossing the manhole cover from a point eight to ten feet south of it and marks on the pavement "as though metal had scraped the surface" north of the manhole. According to Officer Sexton the manhole is located at the point where traffic from the south enters the curve and from that point north the street is slightly down hill. The curve is not banked.

Mr. Frank White, the City plumbing inspector, offered in evidence photographs of the scene where the accident occurred including a photograph of the manhole in question. The photograph was not offered to show the condition around the manhole but other testimony shows that the condition had not changed between the date of the accident and the date the picture was taken.

H. E. Ford, a City engineer, testified that the manhole is ninety feet north of the intersection of Pratt Street and North Fourth Avenue and on a curve to the left, going north, of 55 degrees, 103 feet radius; that there was a "slight depression" at the manhole cover which had been partially filled with material to bring it up near the level of the street. He could not remember the slope of the manhole cover itself.

Leonard Bailey, City Engineer, stated that hot asphalt had been poured in the expansion joints of the street about three weeks prior to the accident; that asphalt rather than tar had been used because it retains more stability in hot weather than tar. According to Mr. Bailey, the segment of concrete north of the expansion joint had retained its original elevation while the section

to the south, for some reason unknown, had settled slightly taking the cover of the manhole with it. According to Mr. Bailey, there are many causes for concrete settling in this manner. He could not say what the cause was in this instance. He found nothing unusual in this condition and testified that such conditions are common to concrete pavements. There is no evidence to the contrary.

After plaintiff had filed notice of the death of the intestate, Mr. Bailey examined the manhole, as he recalled, with a ruler and found it about one inch below the surface of the segment of concrete to the north. This was after the asphalt had hardened as his examination was in November. Mr. Bailey testified:

"Now, I will ask you whether or not that depression is normal to concrete paved streets?

"That's a normal condition on concrete streets.

"Q. And are there other depressions in that vicinity and other places on concrete streets in the City of Knoxville as bad as that? "A. Yes, Sir."

In City of Memphis v. McCrady, 174 Tenn. 162, 124 S. W. (2d) 248, it was said that a municipality cannot be held as an insurer nor charged with the duty of correcting slight defects which do not amount to a dangerous obstruction calculated to produce injury to persons exercising reasonable care, and where the defect or obstruction is such that reasonable men would not differ in the conclusion that the obstruction or defect was not dangerous to travel in the ordinary modes by persons exercising due care, a verdict should be directed.

After quoting at length from the opinion in the McCrady case, the Court, in Forrester v. City of Nashville, 179 Tenn. 682, 685, 169 S. W. (2d) 860, 861, also quotes from 7 McQuillin on Municipal Corporations, Section 2956, as follows:

"To be actionable the obstruction must be dangerous, and the danger must be such as a reasonably prudent person would have anticipated as a natural and probable result. Expressed otherwise, the well settled rule applicable to cases of this character is that to establish negligence it must be shown that the injury sustained is one that would probably flow from allowing the obstruction as it existed."

The Court then said:

"Probability, not possibility, governs; that it is 'possible' for some one out of many to trip over so slight a projection in the sidewalk as is here involved does not make it dangerous."

To the same effect are Swain v. City of Nashville, 170 Tenn. 99, 92 S. W. (2d) 405; City of Nashville v. Brown, 25 Tenn. App. 340, 157 S. W. (2d) 612, and Vinson v. Fentress, 33 Tenn. App. 359, 232 S. W. (2d) 272.

Of the cases cited and others which could be cited for the same rule, only City of Nashville v. Brown dealt with an injury from vehicular travel as distinguished from an injury to a pedestrian either on sidewalks or in a crosswalk. In that case the question was held for the jury on a showing by the plaintiff that the "dish gutter" over which the vehicle passed was located on a main thoroughfare of the City of Nashville and was nine or ten inches lower than the surface of the street on which the vehicle was traveling.

We are not cited to a case sustaining the right of an injured traveler to have his case go to the jury on similar facts; nor have we been able to find any cases where it has been held that a slight depression such as here described by all the witnesses can give rise to a jury finding

that an injury to persons using the street in the usual and ordinary manner and with due care should have been anticipated by the municipal authorities as a probable result.

It is clear that no injury to an automobile, truck or wagon operated with even slight care could result from the unevenness of the pavement here shown. Due to their peculiar nature motorcycles must be balanced in an upright position. Must a municipality maintain its streets in such perfect condition that such vehicles may operate with safety equal to vehicles having four wheels and free from the danger of being thrown off balance? Or, is the duty on the operators of such vehicles to take note of such imperfections shown here by undisputed proof to be customary on streets paved with concrete?

In our view, to hold municipalities liable for such accidents would prove an intolerable burden. On the other hand to require operators of motorcycles to watch out for such common and slight defects and keep their vehicles under such control as to avoid danger from them would place the burden where it belongs.

As was said in Batts v. City of Nashville, 22 Tenn. App. 418, 123 S. W. (2d) 1099, a court should not permit a jury to hold that slight defects render a city liable merely because of the possibility of some one of many persons tripping thereon, as probability not possibility governs. A municipality is not required to keep its streets and sidewalks in perfect condition and free from slight holes or depressions though it may be held liable for injuries caused by defects in the nature of traps. See cases cited in opinion, supra, and 63 C. J. S., Municipal Corporations, Sec. 807, p. 134.

For the reasons indicated we are constrained to disagree with the able trial judge. The case will stand dismissed as on directed verdict. Costs will be taxed, accordingly, to plaintiff.

Hale and Howard, JJ., concur.