LINDA CHIP RIGBY GARRARD,     )     **Davidson Circuit**

                               )     **No. 96C-2597**

       **Plaintiff/Appellant,**     )

                               )

**VS.**                            )

                               )

**METROPOLITAN GOVERNMENT**     )     **Appeal No.**

**OF NASHVILLE AND DAVIDSON**     )     **01A01-9803-CV-00117**

**COUNTY,**                   )

                               )

       **Defendant/Appellee.**     )

**FILED**

**October 14, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

## IN THE COURT OF APPEALS OF TENNESSEE
### AT NASHVILLE

### APPEAL FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
### AT NASHVILLE, TENNESSEE

### HONORABLE WALTER C. KURTZ, JUDGE

Kenneth M. Switzer, #5785
John B. Carlson, #4754
WILLIAMS & ASSOCIATES, P.C.
Suite 1425, First American Center
315 Deaderick Street
Nashville, Tennessee 37238-1425
ATTORNEYS FOR PLAINTIFF/APPELLANT

Thomas G. Cross, #14810
204 Metropolitan Courthouse
Nashville, Tennessee 37201
ATTORNEY FOR DEFENDANT/APPELLEE,

### MODIFIED, AFFIRMED AND REMANDED.

HENRY F. TODD, JUDGE

CONCURS:
BEN H. CANTRELL, PRESIDING JUDGE, M.S.
WILLIAM C. KOCH, JR., JUDGE

| LINDA CHIP RIGBY GARRARD, | ) | Davidson Circuit |
| | ) | No. 96C-2597 |
| Plaintiff/Appellant, | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| METROPOLITAN GOVERNMENT | ) | Appeal No. |
| OF NASHVILLE AND DAVIDSON | ) | 01A01-9803-CV-00117 |
| COUNTY, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |

# **O P I N I O N**

The plaintiff Linda Chip Rigby Garrard, has appealed from a non jury judgment finding damages of $40,000 for personal injury from a defective sidewalk maintained by Metropolitan Government of Nashville, and Davidson County (Metro), but reducing said damages to $22,000 because of 45% contributory fault of the plaintiff.

The memorandum and order of the Trial Court states:

> On August 16, 1995 between the hours of 9:30 p.m. and 10:00 p.m. the plaintiff was walking on a cement sidewalk in a residential neighborhood on Kendell Drive in Nashville when she stumbled over the edge of a concrete sidewalk segment that protruded unevenly two to three inches above the adjacent segment. The plaintiff fell, suffered a broken wrist and various other injuries.
>
> - - - -
>
> The plaintiff contends that the portion of the sidewalk was pretty much dark and that she simply could not see the uneven portion of the sidewalk. The Court finds that there was a street light almost directly behind the plaintiff as she proceeded down the street. There was also a street light directly in front of the plaintiff. Both these street lights bracketed the area in which she fell and both were approximately 100 feet in front of and behind the area of the fall. (See Exhibits 5, photo's 1 and 2). While the Court credits to some degree the testimony that there were shadows on the sidewalk, the Court finds that the positioning of the street lights impeaches the plaintiff's description of the lighting and convinces the Court that plaintiff has exaggerated the lack of lighting available.
>
> The plaintiff does rely further on the testimony of a safety engineer, Charles Turnbow. His testimony can be simply summarized. Mr. Turnbow says that the raise in the

sidewalk found in this case presents a hazard to a pedestrian and that it was probable that a person would fall under these circumstances. It is doubtful if the testimony of an expert is needed to tell the Court about the common experiences of walking and tripping. See T.R.E. 702. It seems that common experience has taught all of us about walking and tripping on sidewalks. The Court, however, has considered the testimony of Mr. Turnbow.

- - - -

If the fall of the plaintiff had taken place during daylight hours the results of this case would have been different.

The Court is of the opinion that the sidewalk in question during night time hours was dangerous. While the plaintiff has exaggerated the inadequacy of the lighting, the Court finds that there was some impairment of the ability to see the defect in the sidewalk and that the Metropolitan Government was negligent. The Court further finds, however, that the plaintiff was also negligent in her failure to keep a proper lookout and that while the lighting in the area was diminished, the lack of lighting and the presence of shadows is not the sole cause of this accident. The plaintiff was also at fault for failure to keep a proper lookout under these conditions.

Appellant presents the following issues:

1. Whether the trial court abused its discretion in admitting Exhibit 10, an unauthenticated photograph, into evidence.

2. Whether the evidence preponderated against the trial court's finding that Chip Garrard was forty-five percent at fault in the August 16, 1995 accident.

Metro presents the following issues:

1. Should the trial court have dismissed Garrard's claims at the close of her proof under the Tennessee Governmental Tort Liability Act?

2. If Garrard's claims were not subject to dismissal, did the trial court properly allocate fault among the parties based on the proof at trial?

**Appellant's First Issue: Exhibit 10.**

Unless an exhibit is self-authenticating (and a picture is not), it must be identified by competent testimony as illustrating a fact relevant to the controversy. The record contains no such testimony as to Exhibit 10. The plaintiff expressly testified, without contradiction, that Exhibit 10 did not accurately portray what could and could not be seen on the occasion of her injury.

The brief of Metro does not discuss this issue.

By comparison with other pictures in the record, it may be reasonably inferred that it represents the same scene as the other pictures, but it should not be considered for the purpose for which it was offered, i.e. to show what was and was not visible on the night of plaintiff's injury. The foregoing governs the consideration of said exhibit by this Court in reviewing the evidence de novo as provided by T.R.A.P. Rule 13(d).

**Appellant's Second Issue: Percentage of Fault.**

The Trial Court found that the location of plaintiff's fall was lighted by two street lights. There is no evidence as to their exact location or distance from the site of injury except the testimony of plaintiff that both were on the opposite side of the street and one was behind her and one was in front of her. She testified without contradiction that the area was not pitch dark, but that there were "strange shadows" in the area. This Court interprets this testimony to mean that some obstruction such as trees prevented the street lights from illuminating the sidewalk uniformly so that some spots were lighted and some were not.

The Trial Court determined that plaintiff was at fault in failing to keep a proper lookout. If her undisputed testimony is to believed, it was impossible to keep a proper lookout as to that

part of the sidewalk where the shadows were. This would raise the question of the duty of the plaintiff to wander about looking for a safe, well lighted path for her passage, leaving the sidewalk when necessary to walk in the light.

The general rule is that a citizen walking along a street does not have to look at the pavement constantly - he may presume that the city has performed its duty. *Buford v. City of Clarksville*, Tenn. App. 1994, 885 S.W.2d 78.

The allocation of fault involves the reasonableness of the conduct of the injured party and that of the defendant. *Eaton v. McClain*, Tenn. 1994, 891 S.W.2d 587.

On April 27, 1995, 111 days before plaintiff's injury, Metro was notified of the defect in the sidewalk which had not been corrected when plaintiff was injured.

The allocation of percentage of fault requires consideration of *Coln v. City of Savannah*, Tenn. 1998, 966 S.W.2d 34 wherein the Supreme Court revised the open and obvious rule to place an additional burden upon the controller of the injury scene to avoid injury of a person exercising ordinary prudence.

The evidence preponderates against the finding that plaintiff was 45% at fault in the production of her injury.

The grievous fault of Metro in delaying 111 days in repairing a dangerous defect in its sidewalk constituted 75% of the fault producing plaintiff's injury and plaintiff's oversight was 25% of the fault producing her injury. The judgment of the Trial Court is modified accordingly.

**Defendant's First Issue: Failure to Dismiss**.

Metro cites a portion of T.C.A. § 29-20-203 reading as follows:

> Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe or dangerous condition of any street, alley, sidewalk or highway owned and controlled by such governmental entity.

Metro argues that the foregoing is in derogation of common law and must be strictly construed, citing *Helton v. Knox County*, Tenn. 1996, 922 S.W.2d 877, which involved an allegedly dangerous bridge. That authority stated that the standard of care is one of reasonableness, citing *Swain v. City of Nashville*, 170 Tenn. 99, 92 S.W.2d 405 (1936), which stated that the duty of ordinary care to maintain a reasonable safe condition for users exercising reasonable care.

A municipality is liable when the obstruction is a danger from which injury might be reasonably anticipated. *City of Memphis v. McGrady*, 174 Tenn. 162, 124 S.W.2d 248 (1938). In the cited case, the Supreme Court affirmed the dismissal of a suit based upon a 2 ½ inch difference in level of adjoining sections of a sidewalk where the injured party struck her heel upon the projection of the sidewalk in daylight. Also, the cited authority stated:

> We have no statute measuring the liability of municipalities for injury resulting from defects in sidewalks. This case is to be determined by reference to the common law.

In the present case the special sircumstances of darkness relieved by only partial illumination distinguish the authorities based upon observation in daylight. A 2 ½ inch "step up" which would be readily visible to an ordinarially prudent pedestrian in daylight might not be noticed by the same pedestrian when obsured by shadows at night.

If was not error for the Trial Judge to fail to dismiss plaintiff's suit for contributory negligence or lack of evidence of negligence of the city.

**Defendant's Second Issue: Percentage of Fault.**

This issue has already been determined in disposing of plaintiff's second issue.

The judgment of the Trial Court is modified to reduce the percentage of plaintiff's fault to 25% and to increase the amount of the judgment to $30,000. As modified, the judgment is affirmed. Costs of this appeal are taxed to the appellee. The cause is remanded to the Trial Court for further proceedings in conformity with this opinion.

### MODIFIED, AFFIRMED AND REMANDED.

_____
HENRY F. TODD, JUDGE

CONCUR:

_____
BEN H. CANTRELL, P.J., M.S.

_____
WILLIAM C. KOCH, JR., JUDGE