250

## KENNETH MARTIN, B.N.F., v. CITY OF KINGSPORT.

## ROY MARTIN, v. CITY OF KINGSPORT.
### —405 S.W.(2d) 780.

Eastern Section. August 13, 1965.

Certiorari Denied by Supreme Court March 7, 1966.

M. Lacy West, Kingsport, for plaintiffs in error.

W. E. Weber, Kingsport, for defendant in error.

McAMIS, P.J.   Kenneth Martin, a minor suing by next friend, brought this action against City of Kingsport to recover for personal injuries sustained while riding his motor bike on Miller Street in Kingsport. Roy Martin, his father, in a separate action sued to recover for loss of services and medical expenses and the two cases were tried together.

At the conclusion of all the evidence the trial judge overruled the City's motion for a directed verdict and the jury returned a verdict for $5,000.00 in favor of the minor plaintiff and a verdict for $2,500.00 in favor of the father.

City of Kingsport then moved for a new trial on the ground the Court erred in overruling its motion for a directed verdict, first, because notice was never given as required by T.C.A. 6-1003 and, secondly, because there was no evidence of negligence on the part of the City in maintenance of Miller Street. Both of these grounds of the motion were sustained and the suits dismissed. Plaintiffs have appealed. Since the suit by Roy Martin, the father, is a derivative action reference to his suit will be omitted.

Since the City itself created the defect, if one existed, it was not necessary to give notice of the accident under T.C.A. 6-1003, and the assignment directed to this ruling must be sustained. Hood v. Allen, 190 Tenn. 56, 227 S.W.2d 534, 16 A.L.R.2d 1286 and cases cited.

Just prior to the accident, plaintiff had attended a boy scout meeting at Bethel Church. He left the Church after dark on his motor bike and passed over the church parking lot. His lights were burning. After stopping at the edge of the street, he moved forward at a speed of 5 or 10 miles per hour, making at the same time a turn to his left. This made it necessary that he lean his motor bike to the left. According to his testimony, as he made the turn and was in the act of "straightening up" he saw a place in the pavement which had been scraped off by the City's grader but that it was too late to stop. His motor bike slid into the ditch, throwing him upon the pavement and causing serious and permanent injuries.

█ In reviewing the propriety of directing a verdict our function is not that of ascertaining where the weight of the proof lies but only to determine whether, taking the strongest legitimate view of the evidence and every reasonable inference therefrom, there is credible, material evidence to support a verdict. D. M. Rose & Co. v. Snyder, 185 Tenn. 409, 206 S.W.2d 897 and cases there cited; City of Chattanooga v. Ballew, 49 Tenn.App. 310, 354 S.W.2d 806; Browning v. St. James Hotel Co., 49 Tenn.App. 396, 355 S.W.2d 462; McFerrin v. Crescent Amusement Co., 51 Tenn.App. 13, 364 S.W.2d 102.

In the light of these holdings, we pass to a consideration of the proof as to the extent and cause of the alleged defect in the street.

The accident occurred October 15, 1963. Miller Street was black topped when the area was taken into the City of Kingsport several years prior to the accident. The width of the paved surface ranged from 16' 4" to 15' 8". There are no curbs. At the accident point the shoulder was at least 12" wide and beyond that was an open drainage ditch apparently 12" to 15" in depth.

The accident occurred on the east side near where the Ferguson driveway enters the street. To provide passage over the ditch from the Ferguson driveway a tile had been laid and covered over.

Pursuant to a work order issued by the City, in September, 1963, a city grader was assigned the duty of cleaning out the ditches on both sides of Miller Street. This was accomplished by placing the right wheels of the grader in the ditch and tilting the blade downward to the bottom of the ditch. As the grader moved forward dirt from the bottom of the ditch was thrown upon the pave-

ment where it could be loaded by a high lift. When the grader reached a driveway, such as that of the Fergusons above described, the operator was forced to take the wheels out of the ditch and raise the blade until the driveway had been passed. He would then again place the right wheels in the ditch and again tilt the blade as before.

■ It is plaintiffs' contention, sustained by credible proof, that when cleaning the ditch about 30 days prior to the accident the operator, after passing the Ferguson driveway, cut back into the ditch too soon and in doing so "shaved off" some of the black top and shoulder at the point where plaintiff went into the ditch. Plaintiff's father testified that he visited the scene of the accident on the following day. He compared conditions then and in December, 1963, when a picture, filed in the record as Exhibit 9, was taken, pointing out from the picture where plaintiff went into the ditch. The picture shows the black top missing at or near that point. It does not show the ditch as such extending into the paved portion of the street. In his original testimony the witness did not fix the width or length of the missing portion of the pavement. However, near the close of his cross examination, in response to a question from the Court, he testified:

"The Court: How big is that ditch?

"A. Oh, it's a pretty good size ditch. Where he run into it, its about 14 inches wide, and it runs out into the road about 42 inches.

"The Court: From the road?

A. Yes, sir, the blacktop."

The question to be decided is whether reasonable minds might disagree as to whether the defect was such that a

reasonably careful and prudent person should anticipate that some one, exercising due care and using the street in the usual and customary way, would probably be injured as a result of leaving it unrepaired or failure to post a warning.

In City of Knoxville v. Cooper, 37 Tenn.App. 502, 265 S.W.2d 893, the court had under consideration a motorcycle accident which allegedly resulted from a slight defect in the street and granted peremptory instructions in favor of the City. The opinion observes that of prior Tennessee cases only City of Nashville v. Brown, 25 Tenn.App. 340, 157 S.W.2d 612, dealt with an injury from vehicular travel. In the Brown case liability of the City was held to be a question for the jury, in view of the proof that a ''dish gutter'' nine or ten inches lower than the surface of the street existed on a main thoroughfare in the City of Nashville. The Cooper case and the Brown case, so far as we are advised, are the only cases in this State dealing with municipal liability for an injury to a vehicular traveler, claimed to be due to a street defect.

In the Cooper case the defect was found from undisputed evidence to be so slight that it could not have caused any injury to a person traveling in a four wheeled vehicle and that the City was not required to keep its streets in such perfect condition that a person riding a motorcycle would never be thrown off balance and injured.

We quote:

''It is clear that no injury to an automobile, truck or wagon operated with even slight care could result from the unevenness of the pavement here shown. Due to their peculiar nature motorcycles must be balanced in an up-

right position. Must a municipality maintain its streets in such perfect condition that such vehicles may operate with safety equal to vehicles having four wheels and free from the danger of being thrown off balance? Or, is the duty on the operators of such vehicles to take note of such imperfections shown here by undisputed proof to be customary on streets paved with concrete?

"In our view, to hold municipalities liable for such accidents would prove an intolerable burden. On the other hand to require operators of motorcycles to watch out for such common and slight defects and keep their vehicles under such control as to avoid danger from them would place the burden where it belongs."

Our first impression was that the Cooper case was controlling in this case. However, upon a more careful analysis of the proof and more mature consideration, we have reached the conclusion that the case should have been left to the jury.

In the Cooper case we held that a motorcyclist was bound to anticipate the usual differences in elevation in concrete pavements and that the undisputed proof showed the defect in question, being only one inch in depth, was not in excess of the usual variation. It was held, as a matter of law, that the City was not guilty of negligence in failing to remove such variations and in not making the street so free from defects that a motorcyclist would never be thrown off balance.

The circumstances of this case are materially different. The defect here was not in any way similar to the one involved in the Cooper case. Nor was it of the type to be expected. On the contrary, as above pointed out, the shoulder prior to cleaning the ditches was at least one

foot in width and there is material evidence that it was considerably wider. Notwithstanding the existence of the adjoining ditch the operator of the grader employed by the City negligently cut away all of the shoulder at that point and some of the paved portion of the street slanting it into the ditch. The jury may well have found that a reasonably prudent and careful person would have anticipated, as a reasonable probability, that someone exercising due care would slip or slide on the slanted area thus formed and be precipitated into the ditch. Plaintiff testified there were chuckholes in the middle of the street and that he went to the side of the street to avoid them.

"Where the evidence is conflicting or where the facts are such as to authorize different inferences as to whether a defect is a dangerous obstruction calculated to cause injury, the question is one of fact for the jury. City of Memphis v. McCardy, 174 Tenn. 162, 166, 124 S.W.2d 248, 249; Village of Plainview v. Mendelson, 65 Neb. 85, 90 N.W. 956, 957. In McQuillen on Municipal Corporations 2 Ed., Vol. 7, sec. 2909, p. 31, it is said:

" 'If in the given case there is a reasonable basis for a difference of opinion among sensible and fair-minded men on the question of the reasonable safety of the street involved, it becomes a question of fact for the determination of the jury. (citing cases)' " City of Nashville v. Brown (supra) 25 Tenn.App. 347, 157 S.W.2d 617.

For the reasons indicated it is our opinion the Court properly allowed the case to go to the jury and erroneously directed a verdict for the City on its motion for a new trial. Accordingly, the case will be remanded for a new trial with costs of appeals to be paid by the City. All costs of the Law Court will abide the final result.

Cooper and Parrott, JJ., concur.